BETTY JANE HAND, Plaintiff and Respondent, v. JAMES A. HAND, Defendant and Appellant.

No. 9656.

Submitted April 23, 1957. Decided June 18, 1957.

312 Pac. (2d) 990.

572

Messrs. Skedd, Harris, Risken Mufich, Helena, for appellant.

Messrs. Loble & Loble and Mr. Gene A. Picotte, Helena, for respondent.

Mr. L. V. Harris and Mr. Henry Loble argued orally.

MR. JUSTICE CASTLES:

This is an appeal by a defendant husband seeking to set aside an order of the Lewis and Clark County district court quashing an order to show cause why a decree of divorce granting custody of minor children to a plaintiff wife should not be modified to restrain the wife from taking the children out of the state. The order to quash was based on defective service of the show cause and temporary restraining order.

As presented, the problem appears as a child custody dispute. But the facts raise two jurisdictional questions which are fundamental: first, when an attorney dies, must appointment of his successor be demanded of his client before further proceedings against the client; and second, may an order to show cause on a motion to modify custody provisions of a divorce decree be constructively served? The controlling statutes, alone, answer first, that the demand must be made, and second that when a party may be brought into contempt the orders must be served personally. Citations and the discussion which follows, sufficiently dispose of this appeal, including respondent's motion to dismiss.

Appellant's oral motion that certain matter be added to the record is sustained. The record is accordingly corrected and as corrected is now reviewed.

The parties were married in Montana on May 29, 1947. They had two children, the subjects of this controversy. The parents were divorced, instanter, in department number one of the Lewis and Clark County district court on July 26, 1950. The wife, respondent herein, was given custody of the children without limitation except as to rights of reasonable visitation in the husband, appellant herein. Thereafter, appellant married once and respondent married twice, her latter marriage occurring

only a few days before and obviously prompting appellants first move in the present proceedings.

About September 8, 1952, it appears from the record that the plaintiff's attorney died. No successor ever generally appeared. The record reveals no written demand on respondent in accordance with the provisions of R.C.M. 1947, section 93-2104, that she appoint another attorney or appear in person.

On July 14, 1955, appellant instituted these proceedings in department number two of the Lewis and Clark County district court. Why in this department rather than in department number one is not shown. That same day, the judge of department number two issued a show cause and temporary restraining order, returnable July 21. Respondent's mother lived in Helena, Montana, and had both children in her temporary care. The orders were served on her the next day, but without copy of supporting affidavit. Nothing at all was served on respondent.

On the return day, July 21, no attorney appeared for respondent. The setting was vacated, a new show cause and restraining order was issued, and the return date was set forward to August 22. The new order was immediately served on the grandmother, a Mrs. G. H. Brockway, whether with or without copy of supporting affidavit is not made clear. The children were still in Helena in their grandmother's care. But, as before, nothing was ever served on respondent. The sheriff's return recites the order was served "upon the defendant, Betty Jane Hand by delivering to Mrs. G. H. Brockway, as agent." The order was directed to respondent and restrained her, "her agents and servants and particularly Mrs. G. H. Brockway" from removing either of the minor children from Lewis and Clark County "until further order of this Court."

On or about August 9, respondent took her children out of the state. Being unable to serve respondent personally, one of appellant's attorneys attempted on August 15, 1955, to serve respondent by leaving a copy of his affidavit and a copy of the second show cause and restraining order, returnable August 22, in the hands of the senior member of a firm of attorneys with

whom, from about the 15th of July and through a junior member, appellant's attorneys had been discussing the matter by telephone. Apparently appellant's attorneys assumed personal service could be effected upon respondent constructively by service on these attorneys. The senior member who received the papers knew nothing of the case. Up to that time neither the firm nor any member of the firm had in any manner appeared as respondent's attorneys of record.

The matter rested at this point until August 22, when what had been going on became more clear. It illustrates the confusion this opinion seeks to remove.

Respondent's present attorney appeared specially and moved to quash. With considerable heat, appellant's counsel complained he had discovered that on July 13, the day before the temporary restraining order was made in department number two of the Lewis and Clark County district court, the then judge of department number one of that court, who originally granted the divorce in 1950, had issued an order, or at least such an order, dated July 13, 1955, was now on file in the case, permitting the respondent to take her children out of the state, although this was the very thing she had been restrained from doing by the order dated July 14, issued the following day by the judge of the other department of the very same district court.

Then, with even more heat, the appellant attorney produced the court minutes for July 13 to show that the judge who issued the restraining order on July 14 had sat, on July 13, for the then judge whose signature appeared on the order dated July 13 permitting removal of the children, and, additionally to show that these same minutes recited that the then judge, whose signature appeared on the order which bore date of July 13, was, on July 13, absent from the court.

Next, the appellant examined respondent's attorney under oath and over his protests of privilege, and from him elicited that this respondent attorney, who insisted he had not previously been employed by respondent, had prepared the written order

which permitted respondent to remove her children from the
state and had later filed it as a part of the district court record.
In explanation however, the respondent attorney insisted not he
but the respondent herself had taken the order of July 13 to
the then judge whose signature it bore and had herself secured
the signature. In summary this is the record made at the August
22 hearing. The judge remarked that *who* was served "makes
all the difference in the world," and on September 16, 1955,
sustained respondent's motion to quash the order to show cause.
Thereupon, attorneys for appellant set about perfecting this
appeal. Practically, it made little difference. By then respond-
ent and her children had been gone for two months.

In every appeal the first question is that of jurisdiction.
■ Endresse v. Van Vleet, 118 Mont. 533, 539, 169 Pac. (2d)
719. We now consider that question under two heads: (1) was
there statutory substitution of a respondent attorney, and (2)
was there sufficient service of process? On each point our
answer is, no.

(1) Was there statutory substitution of respondent attorney?
■ The first appearance of record for respondent after her
original attorney died was made by the respondent's present
attorney on August 22, 1955. This is a special appearance solely
by motion to quash the order to show cause. It does not waive
the defect.

A special appearance for the "purpose of taking objection to
■ the want or irregularity of service of notice of motion is
not a waiver of such defect * * *" 60 C.J.S., Motions and
Orders, section 19, page 21; 3 Am. Jur., Appearances, section 4,
page 783. In Montana this rule was first stated by two deci-
sions found in the earliest printed volume of Supreme Court
Reports, viz.: Kleinschmidt v. Morse, 1 Mont. 100; Murphy v.
Ames, 1 Mont. 276. See later discussion by Chief Justice
Brantly, in Eadie v. Eadie, 44 Mont. 391, 120 Pac. 239. See,
also, Gilna v. Barker, 78 Mont. 357, 254 Pac. 174; Great North-
ern Ry. Co. v. Hatch, 98 Mont. 269, 38 Pac. (2d) 976; Bohn v.
Bohn, 164 Cal. 532, 129 Pac. 981; In re Blalock, 233 N.C. 493,

64 S.E. (2d) 848, 25 A.L.R. (2d) 818, with annotation beginning at page 835 and citing Gilna v. Barker, supra, at page 839.

Procedure for substitution following death of an attorney is controlled by statute. R.C.M. 1947, section 93-2104, provides: "When an attorney dies, * * * a party to an action, for whom he was acting as attorney, *must*, before any further proceedings are had against him, *be required* by the adverse party, by written notice, *to appoint another* attorney or appear in person." Emphasis supplied.

This was originally a rule of court. See Roush v. Fort, 3 Mont. 175, 180. The statute has been discussed at length in Endresse v. Van Vleet, supra, 118 Mont. at page 537, 169 Pac. (2d) at page 721, where it is said: "In 3 Cal. Jur., section 41, page 632, concerning an identical section (286) of the California Code of Civil Procedure, it is said: ''This section means no more than it plainly says, viz., that no proceedings may be had against a party, no judgment or order or other step be taken, until he appoints an attorney, unless the prescribed notice be first given'.

"In the case at bar the plaintiff failed to give to defendants the written notice prescribed by section 8977, Revised Codes [of 1921, now R.C.M. 1947, section 93-2104], and, in violation of such statute, has attempted to perfect an appeal against defendants and is here attempting to take further proceedings against them. This the plaintiff may not do."

As the Oklahoma court succinctly puts it, in Tway v. Hartman, 181 Okl. 608, 609, 75 Pac. (2d) 893, 896, "To be an attorney of record the attorney's name must appear somewhere in the permanent records or files of the case or on the appearance docket."

The Wisconsin court in Fidelity & Deposit Co. v. Madson, 201 Wis. 609, 612, 231 N.W. 170, 172, 70 A.L.R. 832, has given the reason for the rule in saying: "* * * in order to avoid unnecessary uncertainty, so that all concerned will know definitely who is the authorized attorney of every party to an action, the

578

safe and orderly conduct of litigation is certainly facilitated by making the fact of substitution a matter of record, by formal order, whether the substitution is made with or without the consent of the prior attorney. *The propriety of such a formal order is pointedly demonstrated in this case."* Emphasis supplied.

From the above it follows that barring waiver, estoppel and other considerations of equity which are not applicable here, until there is an appearance of record there is no attorney of record. When one attorney dies, appointment of a successor must be demanded.

(2) Was there sufficient service of process? Respondent was never personally served. Her mother was served with the first order, but without supporting affidavit. This in itself is fatal. R.C.M. 1947, section 93-4205; State ex rel. McKenzie v. District Court, 111 Mont. 241, 107 Pac. (2d) 885. Actions seeking injunctive relief are actions *in personam.* As a general rule, constructive service is insufficient where the object of the action is to determine the personal rights and obligations of the defendant. 72 C.J.S. Process, section 25, page 1025, and citations. Whether or not provided by statute, proper notice to the adverse party and an opportunity to be heard are required. Leonard v. Hoppins, 121 Mont. 275, 191 Pac. (2d) 990. Generally, the rule or order to show cause should be served in person on the party charged. 17 C.J.S. Contempt, section 79, page 101; 13 C.J., Contempt, section 96, page 70, note 70. The mere fact that a defendant has engaged an attorney to look after his interests, either generally or in a particular cause, does not amount to a voluntary general appearance, for the attorney may conclude that his client's interests will be better subserved by not appearing, or he may be engaged merely to enter a special appearance and contest the question of jurisdiction. Nor does the mere examination of the papers in the case filed in the clerk's office nor does a conversation with the plaintiff's counsel or the judge of the court about the case constitute an appearance. 3 Am. Jur., Appearances, section 10, page 788. From

the foreoging it would appear without more that service in this matter must have been upon respondent personally.

However, constructive service was unknown to the common ▮▮▮▮▮▮▮ law and strict statutory observance is required to effect such service. Holt v. Sather, 81 Mont. 442, 264 Pac. 108. In the present matter, two statutes specifically exclude all but personal service. R.C.M. 1947, section 93-8506, provides:

"When a plaintiff or a defendant, who has appeared, resides out of this state, and has no attorney in the action or proceeding, the service may be made on the clerk for him. But in all cases where a party has an attorney in the action or proceeding, the service of papers, when required, must be upon the attorney instead of the party, except of subpoenas, or writs, and other process issued in the suit, *and of papers to bring him into contempt.*" Emphasis supplied.

R.C.M. 1947, section 93-8507, provides: "The foregoing provisions of this chapter do not apply to the service of a summons or other process, *or of any paper to bring a party into contempt.*" Emphasis supplied.

Furthermore the penalty for ignoring a restraining order is ▮▮▮▮ punishment for contempt, in this case a constructive contempt because committed outside the presence of the court. But it is generally held that in order to punish for constructive contempt, it must appear that the order on which the contempt proceeding is based was served on the accused or, if he was not present when the order was made, that he had knowledge of it. See Ex parte Felthoven, 75 Cal. App. (2d) 465, 171 Pac. (2d) 47.

As shown above, respondent's attorneys could not be held to represent her because they had not been substituted for her deceased attorney as the statute requires. As stated above, proper notice to the adverse party and an opportunity to be heard is required. As the court said in Leonard v. Hoppins, supra, 121 Mont. at page 279, 191 Pac. (2d) at page 992, quoting from Merhar v. Powers, 73 Mont. 451, 455, 236 Pac. 1076, and citing many cases:

580

" 'The reason for the rule is manifest. If upon the application of these defendants, the court could change the judgment to the prejudice of the plaintiff, it could thereafter on the application of the plaintiff again change it to the prejudice of the defendants, and continue that practice indefinitely, so that the litigants never would know when their rights were finally adjudicated'." See, also, Sandall v. Sandall, 57 Utah 150, 193 Pac. 1093, 15 A.L.R. 620; Burgess v. Burgess, 239 Mo. App. 390, 190 S.W. (2d) 282.

The judgment and order appealed from are affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES ANGSTMAN and ADAIR, concur.