No. 14372

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

JOHN H. DOBLE, SR.,
  Plaintiff and Respondent,
 -vs-
CAROLE PATRICIA TALBOTT, et al.,
  Defendants and Appellants.

--------------------------------------

No. 14345
HAROLD FULLER et al.,
  Plaintiff,
 -vs-
JOHN H. DOBLE, et ux, et al.,
  Defendants.

--------------------------------------

No.14363
JOHN W. DOBLE, et ux, et al.,
  Plaintiffs and Appellants,
 -vs-
BONNERS FERRY LUMBER COMPANY, LIMITED,
a corporation, et al.,
  Defendants and Respondents.

---

Appealed from: District Court of the Nineteenth and
       Eleventh Judicial Districts
       Honorable Robert C. Sykes, Presiding Judge

Counsel of Record:

 For Appellants:

  H. James Oleson argued, Kalispell, Montana

 For Respondents:

  McGarvey, Lence and Heberling, Kalispell, Montana
  Dale L. McGarvey argued, Kalispell, Montana
  John M. Schiltz argued, Kalispell, Montana
  Murray, Donahue and Kaufman, Kalispell, Montana
  Geroge Best argued, Kalispell, Montana
  Murphy, Robinson, Heckathorn and Phillips, Kalispell,
   Montana
  Lawrence H. Sverdrup, Libby, Montana

---

        Submitted: October 12, 1978

         Decided: JAN 10 1979

Filed: JAN 10 1979

_____
         Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

These three actions were consolidated for appeal by order of this Court on May 31, 1978. Each arises from the controversy between Carole Talbott et al., judgment creditors, and John H. Doble, a judgment debtor. On August 13, 1976, Carole Talbott and her minor children obtained a wrongful death judgment in federal district court against John H. Doble in the amount of $450,000. This sum was subsequently reduced to $225,000.

CAUSE NO. 14345 -- PRIORITY OF CREDITORS

The controversy in this cause centers on a determination of creditors' priorities made by the District Court of the Eleventh Judicial District. On April 27, 1977, the District Court ordered the priorities of two Doble creditors, the Conrad National Bank and the First National Bank of Eureka as first and second respectively. Both banks were plaintiffs in a suit against Doble seeking satisfaction on promissory notes which they had issued to him during 1976. This order, however, made no mention of Carole Talbott's judgment against Doble. On May 3, 1977, the District Court entered an amended order, adding a paragraph which indicated that Carole Talbott had a judgment against John H. Doble, and ordered that judgment inferior to the claims of the banks. On February 8, 1978, Talbott's attorney presented a motion to have the May 3, 1977 decree establishing priorities among the creditors set aside on the ground that Talbott was given no notice her rights were to be determined. On February 27, 1978, the District Court ordered the May 3, 1977 order set aside "insofar as any effect on the rights of Carolyn [sic] Patricia Talbott are concerned."

On appeal, Talbott seeks to have the orders of May 3 and April 27 set aside so the three creditors may reestablish their relative priorities in a single proceeding. Talbott and Doble have agreed to a remand to the District Court, and the banks involved do not object to a remand. Therefore, Cause No. 14345 is remanded to the District Court so all the John H. Doble creditors may litigate their relative priorities in a single proceeding. The priorities as established on April 27 and May 3, 1977, are hereby set aside.

CAUSE NO. 14372 -- INJUNCTION OF SHERIFF'S SALE

Carole Talbott appeals from an order of the District Court, dated April 11, 1978, permanently enjoining her from proceeding on a writ of execution on her judgment against Doble. On August 29, 1977, Talbott filed her federal judgment against Doble in the Nineteenth Judicial District Court and obtained a writ of execution on the judgment. Her attorney prepared notice of a sheriff's sale in the Eleventh Judicial District of John H. Doble's interest in the contract for deed and had the date of sale set for October 11, 1977.

On that date, however, Doble's attorney filed a complaint in District Court asking that the sheriff's sale be enjoined on various grounds, including that the date of the contract on the sheriff's sale notice was wrong, that the wrong form of notice was used (real property rather than personalty), that the judgment creditor had failed to pay the prior security interests before levying (section 93-4338, R.C.M. 1947), and that there was no proper levy. Due to these alleged defects, the District Court enjoined the

-3-

sale under a temporary restraining order issued the same day and ordered a show cause hearing for October 18 to determine whether the sale should be permanently enjoined. Finally, the District Court ordered that copies of the complaint be served on defendants, Carole Talbott, and the Flathead County sheriff. Doble's attorney hand delivered copies of the complaint and temporary restraining order and show cause order to the sheriff and to Talbott's attorney.

After various delays an attorney's conference was scheduled for April 11, 1978. Following the conference the District Court made an order reciting that Talbott's attorney was present and that he "[represented] to the Court that Defendants Talbott do not intend to proceed further on the writ in question . . ." The court then ordered that a permanent injunction be granted on the writ of execution, that the sheriff be dismissed from the action and that Talbott's right to proceed on a new writ was "in no way prejudiced".

On April 24 Talbott's attorney filed a motion for reconsideration of the April 11 order, alleging that the service of process on him was not adequate as service on his client, that the order was void because no hearing was held on the merits, and that he did not say that he did not intend to proceed on the August 29, 1977, writ of execution, but that "in all likelihood" he would not proceed. (On June 8 following Talbott's notice of appeal, Doble's attorneys filed an affidavit that Talbott's lawyer said his client did not intend to proceed on the writ.)

Following the District Court's denial of Talbott's motion to reconsider, Talbott applied to this Court on May 19 for a writ of supervisory control which was denied on May 31 (Cause No. 14319) with directions to proceed by appeal.

Talbott argues on appeal that the service of process on her attorney was insufficient rendering the District Court's April 11, 1978 order void for lack of jurisdiction and that the injunction is void because the District Court failed to hold a hearing or take evidence justifying such an order.

The District Court's order enjoining the sheriff's sale expressly places no prejudice on Talbott's right to proceed under a new writ. The statute of limitations for actions on judgments is ten years. Section 93-2602, R.C.M. 1947. Doble's attorney sought and obtained an injunction against execution on the August 29, 1977 writ not as an attempt to shelter the proceeds of the contract for deed from a legitimate execution, but rather to prevent the undesirable consequences of a sheriff's sale which failed to take account of prior secured interests--that is, the security interests of the Conrad Bank and the First National Bank of Eureka.

Talbott's attorney contends the injunction was not effective as to his client due to improper service of process. Doble's attorney hand delivered a copy of the complaint and restraining order and show cause order to Talbott's attorney only one week after Talbott's attorney had prepared notice of the sheriff's sale. Talbott argues that such hand delivery to the attorney was not adequate service on his client as he was not a general agent for her, citing Hand v. Hand (1957), 131 Mont. 571, 312 P.2d 990, and Kraus v. Treasure Belt Mining Co. (1965), 146 Mont. 432, 408 P.2d 151. These cases are distinguishable from the present matter and do not rule out service of process on an attorney as a means of obtaining jurisdiction over a client. In Hand the service of process on an attorney was held inadequate because it was on a senior member of a law firm who knew

-5-

nothing about the defendant's case, who had not appeared in any manner as an attorney of record in the defendant's affair, and whose firm had not "in any manner appeared as respondent's attorneys of record." 131 Mont. at 575, 312 P.2d at 992. In Kraus the service of process was on a former employee of an out-of-state mining company who had no access to the closed mine premises, who was receiving unemployment compensation at the time of service, and who told the serving sheriff that he no longer had any connection with the mining company. Under these circumstances service of process was not adequate under Rule 4D(2)(e)(i) as service upon a "managing or general agent" of the company. 146 Mont. at 436, 408 P.2d at 153.

In the present case the attorney's relationship to the client and to the subject matter of the action is much closer. Doble's citation to United States v. Bosurgi (S.D. N.Y. 1972), 343 F.Supp. 815, is helpful in that both the facts and applicable law are closer to the matter at issue. In Bosurgi the defendant sought to vacate service of process upon it under Rule 12(b), Fed.R.Civ.P., alleging that its attorney was not an "agent authorized by appointment . . . to receive service of process." 343 F.Supp. at 816. The defendant (SAICI), a claimant of a fund which Bosurgi had recovered in a separate action, filed an action in state court in New York claiming that it was rightfully entitled to the proceeds of Bosurgi's fund. Meanwhile the United States had filed an action in federal court seeking to foreclose on tax liens which it held on the fund.

Thus, the United States named SAICI as an additional defendant in its foreclosure action and served process on the senior partner of the law firm which represented SAICI

in its state court action.  In declaring this action valid

service of process, the federal district court first noted

the limitations on service of process on an attorney:

> "An attorney, solely by reason of his capacity
> as an attorney, does not thereby become his
> client's agent authorized by 'appointment . . .
> to receive service of process.'  Nor is the
> fact that an attorney represents his client in
> a completely unrelated litigation sufficient to
> establish the requisite authority.  What is
> necessary is that it appear that the attorney
> was authorized, either expressly or impliedly,
> to receive service of process for his client.
> And if such agency is to be implied, it must
> be implied from all the circumstances accom-
> panying the attorney's appointment which indi-
> cate the extent of authority the client intended
> to confer."  343 F.Supp. at 817-18.

Yet in that case, as in the present one, the matter at

issue was not "completely unrelated" to the matter in which

the attorneys were already actively representing SAICI.  As

the court in Bosurgi reasoned:

> "It is beyond question that SAICI's attorneys
> were retained to assert its alleged right to,
> and to obtain possession of, the $215,000.
> This retainer necessarily required the attor-
> neys to resist the claims to the fund asserted
> by other parties, including the United States
> Government.  Receipt of process by the attor-
> ney in this suit, which involves relative
> rights to the settlement fund, was a necessary
> incident of the attorney's effort to establish
> SAICI's claim to the settlement fund by op-
> posing the claims of the government, as well
> as those of the other claimaints.  Litigation
> with the United States must have been intended
> as within the scope of the attorney's authority,
> since to obtain the fund for SAICI, its attor-
> neys would inevitably have to face and overcome
> the claim of the United States."  343 F.Supp.
> at 818.

In the present case, Talbott's attorney necessarily

would be required "to resist the claims to the fund asserted

by other parties." Logically his duty also extends to pro-

tecting his client's claim against the judgment debtor's

attempt to block the execution sale.  As the person entrusted

to safeguard his client's interests through the treacherous

-7-

journey from judgment to satisfaction, Talbott's attorney was "not only adequate, but probably optimal" as the person to receive service of process. 343 F.Supp. at 818. In a circumstance similar to that in Bosurgi and the instant case, another federal court echoed this conclusion:

> "There is no fear . . . that service of the summons and complaint upon [the attorney] would not be brought home to each principal. This is at times a matter of concern in these problems of service of process through claimed authorized agent. That service of process upon their lawyer would bring notice of the lawsuit to [the principals] seems beyond argument and is evident here from the motion itself in their behalf to quash the service. Also, a lawyer endowed with all the authority given as here to act and appear is about the best candidate one could choose to insure notice of a pending lawsuit." United States v. Davis (N.D. N.Y. 1965), 38 F.R.D. 424, 425-26. (Bracketed material added.)

Thus, due to the attorney's representation of Talbott in a closely related action, which necessarily implied a duty to protect his client's interests against this type of action, service of process on her attorney was valid as service on Talbott within the meaning of Rule 4D(2)(a), M.R.Civ.P.

As to Talbott's second contention that the District Court granted the permanent injunction without considering evidence at a hearing, it appears that the words of Talbott's attorney precluded the need for such a hearing. The order granting the permanent injunction states that he told the judge his client did not intend to proceed on the writ of August 29. While Talbott's attorney later declared that what he said was "in all likelihood" the defendant did not intend to proceed on the writ, it is clear that the judge and the other attorneys present at the April 11, 1978 conference understood Talbott's attorney to say his client did not intend to proceed on the writ. Under these circumstances,

the District Court's version of the representations of an attorney must be considered the best guide of what he said.

The District Court had jurisdiction to enter its April 11, 1978 order enjoining the sheriff's sale. Carole Talbott may proceed under a new writ as provided in that order.

CAUSE NO. 14363 -- ORDER NUNC PRO TUNC

In this third cause appellant Talbott seeks to set aside an order of the Eleventh Judicial District Court amending a 1967 judgment nunc pro tunc. As described above, Carole Talbott's federal judgment of August 13, 1976, is against John H. Doble, who is presently the recipient of payments under a contract for deed dated May 1, 1975, as a tenant in common with Helen I. Doble, his wife. John W. Doble, Doble's son, is also the recipient of payments under a separate contract for deed dated May 1, 1975.

In 1966, John H. Doble, Helen I. Doble, John W. Doble and Joyce Doble brought a quiet title action in the Eleventh Judicial District in Lincoln County. In the pleadings for that action the Dobles did not indicate separate ownership of the various tracts to which they wished to quiet titles, but they did present separate evidence of ownership. John W. Doble brought before the court exhibits one through three which were warranty deeds granting various tracts to him and his wife as joint tenants. These tracts, all located in Township 37 North, Range 28 West M.P.M. were:

| Exhibit 1 | Section 26 | E/2 NE/4 |
|---|---|---|
| Exhibit 2 | Section 11 | W/2 NE/4, E/2 NE/4 NW/4, E/2 SE/4 NW/4, SW/4 SE/4 NW/4, S/2 NW/4 SE/4 NW/4 |
| Exhibit 3 | Section 10 | S/2 SE/4 |
| | Section 11 | SE/4 SW/4, W/2 SW/4 |
| | Section 13 | Lots 2, 3 (E/2 NE/4) |
| | Section 14 | NW/4 |

John H. Doble produced warranty deeds granting the following tracts to him and his wife as joint tenants as exhibits four through seven:

| Exhibit 4 | Section 3 | Lots 2 and 7 |
| Exhibit 5 | Section 15 | NE/4 SE/4 |
| Exhibit 6 | Section 14 | NW/4 SW/4 |
| Exhibit 7 | Section 11 | W/2 NE/4 NW/4, N/2 NW/4 SE/4 NW/4 |

The District Court granted judgment for the Dobles in their quiet title action on January 6, 1967, but failed to indicate separate ownership of tracts on the decree. The only mention of the parties by name is in the caption of the judgment and decree, which simply lists all four Dobles as plaintiffs.

On March 28, 1978, after filing a transcript of the federal judgment with the Nineteenth Judicial District Court, Carole Talbott obtained a federal writ of execution. The United States Marshall levied on the property listed in the 1967 quiet title decree on April 5, 1978, and set the date for sale of the property on May 18.

On May 2 Doble's attorney filed a motion to amend the 1967 judgment nunc pro tunc to reflect the separate ownership. The Nineteenth Judicial District Court granted that motion the same day.

Talbott considers herself aggrieved because she interprets the order nunc pro tunc to have been a device to protect Doble's property from her rightful claim. This hinges upon her interpretation of the 1967 judgment which quiets title to the various Doble tracts in Lincoln County. Her claim is that the action served to transfer one-half of John W. and Joyce Doble's interest in their separate lands to John H. and Helen Doble "by operation of law", and

similarly to transfer one-half of John H. and Helen Doble's interest in their separate lands to John W. and Joyce Doble by operation of law. Under this theory it would appear that John H. and Helen have retained their half interest in the land which John W. and Joyce purport to have sold to others under the May 1, 1975, contract for deed.

Several factors, however, make clear that John H. and Helen Doble have never acquired any interest in John W. and Joyce Doble's land. First, the quiet title action which the Dobles filed in 1966 made no mention of a transfer of interests among the Dobles. Its purpose was clearly to give the Dobles uncontested title to their various tracts, especially as against the Bonners Ferry Lumber Co. Ltd., the C.E. Conrad Estate, Inc., the Conrad Corporation, and several other individuals.

Second, the evidence produced at the hearing on the quiet title petition clearly showed John W. and Joyce Doble as the grantees of certain tracts and showed John H. and Helen Doble as the grantees of certain other tracts. In the absence of any pleading or evidence that either of the Doble families claimed ownership in the lands standing in the name of the other, the District Court could not transfer title from the one co-plaintiff to the other co-plaintiff. The nunc pro tunc order did no more than clarify the evidence and the law governing the case.

Third, the Dobles have treated their ownership as separate since the quiet title action. The contracts for deed which the Doble families entered into in May, 1975, are completely separate and on their face convey separate tracts of land. One describes John H. and Helen Doble as tenants in common. Clearly these people in 1975 considered them-

selves to be separate owners of separate lands, and dealt separately with the purchasers of their land.

In 1978 when Carole Talbott gave notice of her intent to execute her judgment by selling all the land listed in the 1967 decree, the Dobles understandably became concerned and moved to amend the decree to clearly reflect their true interest. The only effect of the May 2, 1978 order correcting the judgment was to reflect the original intent of the parties. Amendments are permissible under Rule 60(b)(6), M.R.Civ.P., where they will make the meaning of a judgment or decree more clear and will not act inequitably or to the prejudice of a party. Smith v. Jackson Tool & Die, Inc. (5th Cir. 1970), 426 F.2d 5, 8. Here, the Dobles had little reason to suspect that a subsequent creditor would, more than a decade later, interpret the quiet title decree to mean the four Dobles were tenants in common of all land involved in the decree. A different question might be presented if Talbott's theory of the effect of the 1967 decree was more plausible, and the order nunc pro tunc was in fact a change in the original intention of the quiet title decree. But under the total circumstances of this case, the order does not appear to prejudice Talbott. It merely clarifies what had always been intended. With this determination, it is unnecessary to consider Doble's claim that Talbott lacks standing.

The order nunc pro tunc of May 2, 1978, is affirmed. The order does not act inequitably but rather clarifies what was originally intended by the 1967 quiet title action.

_____
Justice

-12-

We Concur:

_John Conway Harrison_

_Daniel J. Shea_
     Justices

_A. B. Martin_
Honorable A. B. Martin, District
Judge, sitting in place of Mr.
Chief Justice Haswell

_LeRoy L. McKinnon_
Honorable LeRoy L. McKinnon,
District Judge, sitting in place
of Mr. Justice Sheehy