# FILED

April 10 2012

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 11-0474

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 79

CASCADE DEVELOPMENT, INC.,

      Plaintiff and Appellant,

  v.

CITY OF BOZEMAN,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV 07-912A
Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jason A. Delmue; Wittich Law Firm, P.C., Bozeman, Montana

      For Appellee:

          James McKenna; McKenna Law, P.C., Bozeman, Montana

          Submitted on Briefs:  February 8, 2012

                  Decided:  April 10, 2012

Filed:

_____
                       Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Cascade Development, Inc. (Cascade) appeals from an order of the Eighteenth Judicial District, Gallatin County, granting the City of Bozeman's (Bozeman) motion to quash service and dismiss Cascade's complaint. We affirm.

¶2    We rephrase the issues for review:

¶3    *Issue one: was the District Court correct in determining that Cascade had not validly served its summons and complaint on Bozeman pursuant to M. R. Civ. P. 4(k)?*[1]

¶4    *Issue two: was the District Court correct in concluding that Bozeman was not estopped from asserting defective service of process?*

FACTUAL AND PROCEDURAL BACKGROUND

¶5    A dispute arose between Cascade and Bozeman regarding a subdivision the company was building within the city. Cascade filed a complaint alleging various claims against the city with the District Court on December 7, 2007. A summons and complaint were issued by the clerk's office on the same day. However, service was not attempted by Cascade for nearly three years.

¶6    On December 2, 2010, John Adams, a professional process server from Civil Process Service of Bozeman, took the summons and complaint to the Bozeman City Attorney's Office and asked the receptionist who could receive service on behalf of the

---

[1] At the time of the District Court's decision, the controlling rule in this case was codified as M. R. Civ. P. 4D(2)(g) (2009). In 2011, this Court comprehensively amended the Montana Rules of Civil Procedure. While unchanged in substance, the controlling rule is now codified as M. R. Civ. P 4(k).

2

city. Deputy city attorney Susan Wordal was in the reception area at the time, and Adams gave her a copy of the summons and complaint and asked if she could take the papers. The parties dispute whether Wordal expressly indicated she was allowed to accept service on behalf of the city, but the District Court concluded that resolution of this factual dispute was not material to the application of the law involved.

¶7 Bozeman filed a motion to quash service and dismiss the complaint on December 22, 2010. The city argued that M. R. Civ. P. 4(t)[2] required the court to dismiss the action because the plaintiff failed to accomplish service within three years after filing the complaint. Because Wordal was not a commissioner, trustee, board member, mayor or head of the legislative department, the parties capable of receiving service for a local government entity pursuant to M. R. Civ. P. 4(k), the city argued that Cascade's service had been ineffective and the three-year statute of limitations deadline had passed. Following the submission of briefs and a hearing where testimony and oral arguments were presented, the District Court granted Bozeman's motion on July 29, 2011. Cascade now appeals.

## STANDARDS OF REVIEW

¶8 We review a district court's conclusions of law regarding sufficiency of service to determine whether they are correct. *Semenza v. Kniss*, 2005 MT 268, ¶ 9, 329 Mont. 115, 122 P.3d 1203. We review related findings of fact to determine whether they are clearly erroneous. *Semenza*, ¶ 9.

## DISCUSSION

---

[2] Codified at the time as M. R. Civ. P. 4E(1) (2009).

¶9 Cascade argues, citing agency theories, that service was perfected in that Wordal had both implied actual authority and apparent authority to accept process. Further, the city was estopped from challenging the service because of Wordal's alleged actions. The city argues that the Montana Rule of Civil Procedure regarding service of process on municipalities is very specific and must be fully complied with as a matter of law.

¶10 *Issue one: was the District Court correct in determining that Cascade had not validly served its summons and complaint on Bozeman pursuant to M. R. Civ. P. 4(k)?*

¶11 The parties agree that M. R. Civ. P. 4(k) controls this case, providing that service must be made:

> [u]pon a city, village, town, school district, county, or public agency or board of any such public bodies, by delivering a copy of the summons and complaint to any commissioner, trustee, board member, mayor or head of the legislative department thereof.

M. R. Civ. P. 4(k). Deputy city attorneys are not included in this list. However, citing *Doble v. Talbott*, 180 Mont 166, 589 P.2d 994 (1979), Cascade argues that Wordal was empowered to accept service due to the inherent nature of the relationship between city attorneys and the municipalities for which they work. Bozeman contends that *Doble* is inapposite because that case involved service upon an individual pursuant to M. R. Civ. P. 4(e)—not a local government entity as in this case. Further, the unique factual circumstances led to the Court's holding in *Doble*.

¶12 In *Doble*, a creditor was represented by an attorney in an initial action. The debtor later sought an injunction to prevent the creditor from proceeding with a sheriff's sale. Debtor's counsel hand delivered the summons and complaint in the injunction proceeding

4

to the creditor's attorney. However, the creditor argued that service was improper because the creditor had not authorized the attorney to accept personal service in the second action. *Doble*, 180 Mont. at 167-170, 589 P.2d at 995-998. Under the rule for serving individuals, proper service could be performed by "delivering a copy of the summons and complaint to an agent authorized by appointment or law. . . ." M. R. Civ. P. 4(e). The closely related underlying action in the case necessarily and logically extended the attorney's duty to "protecting his client's claim against the judgment debtor's attempt to block the execution sale." *Doble*, 180 Mont. at 172, 589 P.2d at 997. Given the intertwined nature of the cases, the creditor's attorney was "not only adequate, but probably optimal" as the person to receive service. *Doble*, 180 Mont. at 172, 589 P.2d at 997 (internal quotation omitted). Cascade argues that because the city attorney represents Bozeman before all courts and in all legal proceedings, like *Doble*, a city attorney was the optimal person to receive service of process.

¶13 The District Court correctly noted that the rule that relates to service upon individuals expressly provides for effective service upon designated agents, but no such provision exists for the effective service upon local government entities. In *Doble*, we found the creditor's attorney to be an implied agent for the purposes of service of process due to the "circumstances accompanying the attorney's appointment which indicate[d] the extent of authority the client intended to infer." *Doble*, 180 Mont. at 172, 589 P.2d at 997. In this case, the rules do not allow for such implied agency. Effecting service of process on a local government entity is specifically limited to the delivery of the complaint and summons on "any commissioner, trustee, board member, mayor or head of

the legislative department." M. R. Civ. P. 4(k). Moreover, merely providing the city with knowledge of the action by giving the papers to the City Attorney's Office was not a sufficient substitute for valid service. *See Fonk v. Ulsher*, 260 Mont. 379, 383-384, 860 P.2d 145, 147 (1993).

¶14 Rules for service of process are mandatory and must be strictly followed. *Semenza*, ¶ 18. "Our task, when called upon to decide a case involving the Rules of Civil Procedure is to simply apply them as written, not to conform the Rules to what may be a prevailing practice actually at odds with what the Rules clearly and unambiguously require." *Busch v. Atkinson*, 278 Mont. 478, 483, 925 P.2d 874, 877 (1996). We find that Wordal was neither authorized by law to accept service of process pursuant to M. R. Civ. P. 4(k), nor could she be an implied agent to receive service of process for the city.

¶15 Cascade next argues that when serving an entity, a person who does not meet the requirements of the rules may nonetheless effectively receive service if that person has the apparent authority to do so. Bozeman argues that Wordal never held herself out as one of the specific classes of persons able to accept service pursuant to M. R. Civ. P. 4(k). Thus, the professional process server's impression that she was such a person was unreasonable.

¶16 For the proposition that Wordal had apparent authority to accept service when she took the papers, Cascade relies upon our holdings in *Montana Professional Sports, LLC v. National Indoor Football League, LCC*, 2008 MT 98, 342 Mont. 292, 180 P.3d 1142, and *Bryden v. Lakeside Ventures, LCC*, 2009 MT 320, 352 Mont. 452, 218 P.3d 61.

6

¶17 In *Montana Professional Sports*, a process server went to the business address in Louisiana and attempted to serve the National Indoor Football League's (NIFL) president or executive director. Neither was available, but a receptionist who identified herself as the "office manager" agreed to deliver the papers to the company president. However, it was later discovered that the receptionist worked for a separate company also owned by the NIFL president. *Mont. Prof. Sports*, ¶¶ 13-15. Plaintiffs received a default judgment against NIFL, which the corporation challenged, alleging that it should be set aside due to ineffective service of process. *Mont. Prof. Sports*, ¶ 19. NIFL argued that the receptionist wasn't authorized to accept service pursuant to the rules for serving a limited liability corporation because she was not a "person in charge" of the office. *See* M. R. Civ. P. 4(i)(3)(B). We disagreed, holding that the service was proper because the receptionist held herself out as the person in charge of the NIFL's main and only office, she was not a stranger to the NIFL or its president, and the service had provided the corporation with effective notice. *Mont. Prof. Sports*, ¶ 33.

¶18 In *Bryden*, the process server requested to speak with a restaurant manager when he arrived to serve the complaint. A man approached him and introduced himself as the kitchen manager. He stated that the restaurant manager was not present at the time, and that he was "the closest thing to a manager you would get at that time." *Bryden*, ¶¶ 6-11. After a default judgment was entered against the restaurant, defendants moved to quash the service of the complaint and summons. *Bryden*, ¶ 15. We held that there was no reason for the process server to believe that a self-proclaimed manager was not actually in a position of authority to accept service. *Bryden*, ¶ 21.

7

¶19 The District Court found *Montana Professional Sports* to be factually inapposite to this case, because the receptionist in the former held herself out as someone expressly authorized to accept service. *See Mont. Prof. Sports*, ¶ 19. Similarly, the employee in *Bryden* informed the process server that he was the closest thing he would find to a manager at that time. *Bryden*, ¶ 21. In both cases, it was reasonable for the process server to assume that the persons accepting service were authorized to do so under the rules for serving businesses. Cascade does not allege that Wordal made a representation to the process server that she was a "commissioner, trustee, board member, mayor or head of the legislative department;" thus the rules for serving a local government entity do not lend themselves to a conclusion similar to the cited cases.

¶20 Accordingly, we hold that deputy city attorney Wordal had neither implied authority, nor apparent authority to accept service of process on behalf of Bozeman pursuant to M. R. Civ. P. 4(k).

¶21 *Issue two: was the District Court correct in concluding that Bozeman was not estopped from asserting defective service of process?*

¶22 Cascade argues that because the city attorney has accepted service in the past and Wordal agreed to take the summons and complaint in this case, Bozeman should be equitably estopped from challenging service. Bozeman counters that it played no role in allowing the defective service to occur, and that M. R. Civ. P. 4(k) contains "a simple and clear directive" as to how Cascade should have served the city. The District Court ruled that it was not the obligation of the City Attorney's Office to advise the process server as to how to properly effect service, and that Bozeman should not be held accountable for

8

Cascade's failure to adhere to M. R. Civ. P. 4(k). The District Court concluded that neither the city's past practices, nor Wordal's actions altered Cascade's obligation to follow the provisions of the rules. We agree with the District Court.

¶23 Equitable estoppel prevents one party from unconscionably taking advantage of a wrong while asserting a strict legal right, and will be invoked where "justice, honesty, and fair dealing" are promoted. *Selley v. Liberty Northwest Ins. Corp.*, 2000 MT 76, ¶ 11, 299 Mont. 127, 998 P.2d 156 (quotation omitted). The traditional function of the doctrine was the prevention of fraud. *Selley*, ¶ 12. Today, the doctrine of equitable estoppel is grounded in both statute and case law, and is applied to prevent an inequitable result. *Selley*, ¶¶ 9, 14. Neither the common law, nor statute leads to the conclusion sought by Cascade.

¶24 Montana law provides for a conclusive presumption in circumstances where one party has caused another to rely on an intentional misrepresentation:

> The following presumptions are conclusive: (1) the truth of a declaration, act, or omission of a party, as against that party in any litigation arising out of such declaration, act, or omission, whenever he has, by such declaration, act, or omission, intentionally led another to believe a particular thing true and to act upon such belief . . . .

Section 26-1-601(1), MCA.

¶25 Cascade bases its claim on Wordal's statement, alleged to be either, "I will accept service," or "I can accept service." While the District Court did not make a finding, there is no indication that this statement was an intentional effort to mislead the process server, and thus the statutory presumption does not apply here.

9

¶26 The common law doctrine of equitable estoppel rests upon the general principle that "[w]hen one of two innocent persons—that is, persons each guiltless of an intentional, moral wrong—must suffer a loss, it must be borne by that one of them who by his conduct—acts or omissions—has rendered the injury possible." *Selley*, ¶ 13. As we discussed previously, the rules for service of process are mandatory and must be strictly followed. *Semenza*, ¶ 18. The professional process server's failure to consult the rules was not a harmless omission. Moreover, equitable estoppel requires that a complaining party must lack not only the actual knowledge itself, but also lack a readily available means of knowledge as to the true facts. *Elk Park Ranch v. Park Co.*, 282 Mont. 154, 166, 935 P.2d 1131, 1138 (1997). The rules regarding service of process on local government entities are clearly set forth at M. R. Civ. P. 4(k). Cascade's omission made this injury possible. It was neither Bozeman's duty to inform the professional process server of the rules, nor Cascade's right to simply rely upon the statements.

¶27 We conclude that Cascade has failed to establish that Bozeman should be estopped from asserting defective service.

CONCLUSION

¶28 The District Court did not err in its determination that Bozeman's motion to quash service should be granted. For the reasons stated above, the decision of the District Court dismissing this case is affirmed.

/S/ MIKE McGRATH

10

We concur:


/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ JIM RICE