DA 21-0382

FILED

11/03/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0382

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 287

SISTER MARY JO MCDONALD; LORI MALONEY;
FRITZ DAILY; BOB BROWN; DOROTHY BRADLEY;
VERNON FINLEY; MAE NAN ELLINGSON; and the
LEAGUE OF WOMEN VOTERS OF MONTANA,

> Plaintiffs and Appellees,

v.

CHRISTI JACOBSEN, Montana Secretary of State,

> Defendant and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
                In and For the County of Butte-Silver Bow, Cause No. DV-21-120
                Honorable Kurt Krueger, Presiding Judge

COUNSEL OF RECORD:

> For Appellant:

> > Austin Knudsen, Montana Attorney General, Kristin Hansen, Lieutenant General, David M.S. Dewhirst, Solicitor General, Christian B. Corrigan, Assistant Solicitor General, Jeremiah Langston, Assistant Attorney General, Helena, Montana

> For Appellees:

> > James H. Goetz, Goetz, Baldwin & Geddes, P.C., Bozeman, Montana

> > A. Clifford Edwards, Edwards & Culver, Billings, Montana

> > > > Submitted on Briefs:  October 27, 2021
> > > > Decided:  November 3, 2021

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Montana Secretary of State Christi Jacobsen (the Secretary) appeals a July 30, 2021 Order from the Second Judicial District Court in Butte-Silver Bow County. The District Court denied as untimely the Secretary's motion to substitute a judge.

¶2    We restate the issue on appeal as follows:

*Is an official-capacity lawsuit against the Secretary of State a lawsuit against "the State," such that service of process was not complete until the date the Attorney General was served?*

¶3    We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4    The 2021 Montana Legislature enacted HB 325, a bill that would alter the election process for state supreme court justices if passed by ballot referendum in November 2022. Sister Mary Jo McDonald and the other plaintiffs (collectively, McDonald) are suing over the measure and allege it violates the Montana Constitution. They filed their lawsuit against the Secretary in her official capacity, seeking to enjoin her from carrying out 2021 Mont. Laws ch. 402, § 8, the certification for the ballot of the bill's modified provisions of § 3-2-101, MCA.

¶5    McDonald served her complaint and summons on the Secretary on May 13, 2021. That same day, she served the Attorney General's office a "notice of constitutional challenge," citing Rule 5.1 of the Montana Rules of Civil Procedure. The Secretary did not file an answer to McDonald's complaint, and McDonald moved the District Court for summary judgment on July 1.

2

¶6 Prior to the scheduled summary judgment hearing, the Attorney General's office reached out to McDonald to address how it had not been formally served. McDonald disputed the need to do so, but she agreed to submit a joint motion to the District Court to continue the summary judgment hearing until a later date. And on July 7, McDonald and the Attorney General's office executed an acknowledgment of service.

¶7 On July 16, the Secretary moved to substitute the District Court judge. McDonald opposed this motion, arguing that the statutory right to request substitution expires 30 days after service. The Secretary argued that service was only complete on July 7, rendering the motion timely. McDonald argued that service was effective May 13, rendering the motion too late.

¶8 The District Court denied the Secretary's substitution motion as untimely, casting the Attorney General as "not a party" in the case and holding that only the date of service on the Secretary governed the timeliness of the motion. The Secretary appeals, arguing that the District Court misinterpreted the law and the rules of civil procedure in doing so.

## STANDARD OF REVIEW

¶9 "A district court's determination whether to substitute a judge is a question of law that we review for correctness." *City of Missoula v. Mt. Water Co.*, 2021 MT 122, ¶ 8, 404 Mont. 186, 487 P.3d 15.

**DISCUSSION**

¶10 *Is an official-capacity lawsuit against the Secretary of State a lawsuit against "the State," such that service of process was not complete until the date the Attorney General was served?*

¶11 The crux of the dispute between McDonald and the Secretary is whether McDonald is suing *only* the Secretary or whether she is really suing "the State." At the outset of her lawsuit, McDonald served the Secretary alone, and she sent the Attorney General's office only a "notice of constitutional challenge." Montana Rule of Civil Procedure 5.1 requires such a notice anytime a party's lawsuit challenges the constitutionality of a state statute; this includes a copy of the complaint and apprises the Attorney General of private lawsuits that may warrant intervention by the State to defend the challenged law. Notice under Rule 5.1 is not the same thing as service of process under Rule 4, which governs the service required on parties when commencing an action and includes a complaint and summons.

¶12 McDonald takes the position that her suit was just between her and the Secretary, one in which the Attorney General might intervene on behalf of the State but not one in which the Attorney General, representing the State, is a party. The Secretary argues that a lawsuit against her in her official capacity *is* a lawsuit against the State and that valid service on the Attorney General, not just Rule 5.1 notice, was therefore required. Under the Secretary's framing, service was not complete until both she and the Attorney General's office were served, on July 7, rendering her substitution motion timely.

¶13 Resolving this issue requires a tour of several civil procedure rules and statutes. The most important is M. R. Civ. P. 4(l), titled "Serving the State." This rule notes that in lawsuits against the State, a party must deliver the summons and complaint to the Attorney

4

General's office.  It goes on to describe what to do when suing an officer of the state in an *individual capacity*.  In such cases, a party "must serve the state and also serve the officer[.]"  M. R. Civ. P. 4(l).  This clause also applies "whether or not the officer . . . is also sued in an official capacity."  M. R. Civ. P. 4(l).

¶14    Thus, Rule 4(l) clearly requires service on the Attorney General if the lawsuit is against the State, and it also requires service on the Attorney General if a lawsuit is against an officer in her individual capacity.  The rule, however, does not state clearly how to treat a lawsuit against an officer in her *official capacity* alone, like McDonald's lawsuit here seeking to enjoin the Secretary from carrying out the requirements of 2021 Mont. Laws ch. 402, § 8.  Is such a lawsuit just like one against the State?

¶15    One way to answer that question is simply to consider what an executive officer acting in her official capacity is—an agent of the State.  We have noted before that "official capacity claims generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Germann v. Stephens*, 2006 MT 130, ¶ 38, 332 Mont. 303, 137 P.3d 545 (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14, 105 S. Ct. 3099, 3106 n.14 (1985)).  The larger entity here is the State, the ultimate target of McDonald's claim.  However, because the more specific issue is what the rules require for effective service, we can also answer the question by looking to two additional rules, a federal civil procedure rule that informs the meaning of our Rule 4(l) and another Montana civil procedure rule that does the same.

¶16    First, note that Federal Rule of Civil Procedure 4(i) does what our Rule 4(l) does not: it contains express language about "official-capacity" suits.  In such suits, "a party

5

must serve the United States and also send a copy of the summons and of the complaint . . . to the . . . officer[.]" F. R. Civ. P. 4(i)(2). It is helpful to reference the federal rule because the general process is the same and some of the language in the Montana rule is borrowed from it verbatim. Our Rule 4(l) packs the federal rule 4(i) information into one paragraph, and its text about individual-capacity suits is nearly identical. Although Montana's Rule 4(l) does not mirror the express "official capacity" language, its effect is still implied. The rule describes service on the State, on the one hand, and service on individual officers *and* the State in individual-capacity suits, on the other hand. It would be strange for the rule to require service on the State even when an officer is sued *not* in an official capacity, but then exempt the State from service when an officer *is* sued in an official capacity. Thus, the rule appears to assume that official-capacity suits are simply suits against the State.

¶17 Next, we can clearly see that assumption at play in M. R. Civ. P. 12(a)(2). This rule governs when the "State of Montana and Its Agencies, Officers, or Employees Sued in an Official Capacity" must serve their answers. The rule requires responsive pleadings "within 42 days after service on the attorney general." M. R. Civ. P. 12(a)(2). Clearly, Rule 12(a)(2) acknowledges that the Attorney General must be served at the outset of an official-capacity suit.

¶18 McDonald argues that the lack of direct "official capacity" language in Rule 4(l) means that official-capacity suits sit outside its bounds, with no required service on the Attorney General. This argument fails to grapple with the obvious implication of Rule 12(a)(2), and it contradicts our past treatment of official-capacity suits as suits against the

6

State. For example, in a previous case that addressed a very similar ballot referendum, we treated the issue as one of preventing the *State*, through the Secretary of State's office, from certifying the referendum. *Reichert v. State*, 2012 MT 111, ¶ 8, 365 Mont. 92, 278 P.3d 455. The Secretary acts on the State's behalf when carrying out her duties, and the Attorney General represents the State and its officers in court. *See* § 2-15-501(1), (6), MCA (imposing a duty on the Attorney General to defend cases "in which the state or any officer of the state in the officer's official capacity is a party"). Although the Attorney General himself is "not a party" in the same way that McDonald's counsel is "not a party," commencement of this lawsuit still required service on the State as laid out in the rules, much in the same way that the State serves its materials on McDonald through her counsel.

¶19 Having resolved that McDonald's official-capacity suit against the Secretary *did* require service on the Attorney General, we must still address the effect that this requirement has on the Secretary's motion for substitution of a judge. Section 3-1-804(1), MCA, governs these motions. It entitles each party to one substitution, as long as the party files its motion "within 30 calendar days after service has been completed in compliance with M. R. Civ. P. 4." Section 3-1-804(1)(a), MCA.

¶20 The question, therefore, is when McDonald's service on the Secretary was complete under Rule 4. McDonald served the Secretary on May 13, well over 30 days before the Secretary's substitution motion. But McDonald did not effectuate service on the Attorney General's office until July 7, with the execution of the acknowledgment, only nine days before the Secretary's motion. Because § 3-1-804(1)(a), MCA, refers to Rule 4 generally, we must look to that rule as a whole to discern the effect of the acknowledgment of service.

7

Rule 4(d)(3)(E) governs typical service by use of such acknowledgments. It states that "the notice and acknowledgment must be signed and dated by the defendant, and service of summons and complaint will be deemed complete on the date shown." M. R. Civ. P. 4(d)(3)(E). Thus, the service that Rule 4 requires was not complete until July 7, at which point McDonald had served both the Secretary and the Attorney General as required by Rule 4(l).

¶21 McDonald makes a final argument in defense of the District Court's decision, which is that we prefer not to "exalt form over substance." *Yarborough v. Glacier County*, 285 Mont. 494, 497, 948 P.2d 1181, 1183 (1997). Our comment to that effect regarded a dispute wherein a plaintiff served a defendant a duplicate of her summons because the original, timely document had been misplaced after the defendant rejected it and demanded personal service rather than a waiver. We held that it would be unjust to foreclose a plaintiff's access to justice based on the mere difference between an original piece of paper and a copy that can serve the same purpose. *Yarborough*, 285 Mont. at 499. And we have since taken the same approach in similar circumstances. *See Quamme v. Jodsaas*, 1998 MT 341, 292 Mont. 342, 970 P.2d 1049 (regarding a second summons issued after attorney turnover led to the first expiring); *Schmitz v. Vasquez*, 1998 MT 314, 292 Mont. 164, 970 P.2d 1039 (regarding an amended summons that was identical except for dropping one of two defendants).

¶22 While this case involves service of process, it is unlike the circumstances McDonald cites. Those cases arose in a context where a plaintiff's suit would be dismissed due to the technical problems with the summons, while here, the only issue is the date upon which

8

McDonald's lawsuit commences for certain purposes. Furthermore, we have previously stressed that "[r]ules for service of process are mandatory and must be strictly followed." *Cascade Dev., Inc. v. City of Bozeman*, 2012 MT 79, ¶ 14, 364 Mont. 442, 276 P.3d 862. McDonald points to the Rule 5.1 notice she sent to the Attorney General's office in May as an adequate substitute for strict service, contending that this notice effectuated the same substantive purpose as service by providing the Attorney General a copy of the complaint. But while McDonald's Rule 5.1 notice may have made the Attorney General aware of her suit against the Secretary, it did not include a summons like valid service under Rule 4. Furthermore, we have previously held that "even where a defendant has actual notice of the summons and complaint[,] knowledge of the action is not a substitute for valid service." *Mountain W. Bank v. Glacier Kitchens*, 2012 MT 132, ¶ 16, 365 Mont. 276, 281 P.3d 1284 (citing *In re Marriage of Blaskovich*, 249 Mont. 248, 250, 815 P.2d 581, 582 (1991)) (internal quotations omitted). The timeliness rule in the substitution statute is concerned merely with *when* valid Rule 4 service was complete, and McDonald's emphasis on the fact that the Attorney General had knowledge of the case before then does not change our analysis.

¶23 Because McDonald's service under Rule 4 was incomplete until execution of the acknowledgment with the Attorney General's office on July 7, the Secretary's July 16 motion to substitute a judge was timely, and the District Court erred in denying the motion.

## CONCLUSION

¶24 We reverse the District Court's July 30, 2021 order denying the Secretary's substitution motion as untimely, and we remand for further proceedings consistent with this Opinion.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE