No. 00-374

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 178

STATE OF MONTANA,

Plaintiff and Respondent,

v.

LARRY STUART,

Defendant and Appellant.

APPEAL FROM: District Court of the Twenty-First Judicial District,

In and for the County of Ravalli,

The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Steven N. Eschenbacher, Attorney at Law, Hamilton, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Jim Wheelis,

Assistant Attorney General, Helena, Montana

George H. Corn, Ravalli County Attorney, Hamilton, Montana

Submitted on Briefs: December 21, 2000
Decided: August 30, 2001

Filed:

_____

Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Larry Stuart pled guilty in the Twenty-First Judicial District Court, Ravalli County, to the offense of driving under the influence of alcohol (DUI). The District Court sentenced him and entered judgment. Stuart appeals from an underlying order, having reserved the right to do so. We affirm.

¶2 The issue on appeal is whether the District Court erred in denying Stuart's motion to dismiss for lack of speedy trial.

¶3 Stuart was arrested for DUI on the evening of October 9, 1998. He made bail and was released after being jailed overnight. His case originally was set for trial in the Ravalli County Justice Court on March 9, 1999, but was delayed for briefing on his February 23, 1999 motion to suppress evidence. The motion was heard on April 20, 1999, and the Justice Court granted Stuart's motion to suppress on April 22, 1999.

¶4 The State of Montana appealed to the District Court, where the parties agreed to rebrief the motion to suppress prior to the suppression hearing. The hearing was held on July 30, 1999, and the arresting officer was examined and cross-examined by counsel for both Stuart and the State; in addition, the State offered into evidence-and the District Court admitted-two photographs. The District Court denied the motion to suppress and remanded the case to the Justice Court for further proceedings.

¶5 Proceedings continued in the Justice Court beginning on August 17, 1999, and trial was set for October 14, 1999. On motion by the State after a determination that the District Court had remanded erroneously, and with Stuart's agreement, the Justice Court transferred the case to the District Court on October 12, 1999. The parties reached a tentative resolution of the case in December of 1999, but it ultimately was abandoned. The District Court set trial for April 3, 2000, and subsequently rescheduled it for May 11, 2000.

¶6 On March 22, 2000, Stuart filed a motion to dismiss for lack of speedy trial. He

contended the burden was on the State to establish he had not been prejudiced but that, in any event, he had been prejudiced. Stuart did not attach exhibits to his motion, submit affidavits in support thereof or request a hearing. The State responded, contending the burden regarding prejudice was on Stuart and no prejudice had been demonstrated; it attached a number of exhibits to its response. Stuart filed a reply.

¶7 On the basis of the briefs and attached materials, and observing that no hearing had been requested, the District Court denied Stuart's motion. Briefly stated, the court placed the burden of demonstrating prejudice on Stuart and determined he had not met his burden. In the event the burden regarding prejudice were on the State, the court stated it would determine the State met its burden of overcoming the presumption of prejudice.

¶8 Thereafter, and during the process of summoning the jury for trial, Stuart moved for reconsideration of the denial of his speedy trial motion; he attached his own and his wife's affidavits to the motion. The State argued in response, among other things, that the affidavits were untimely. The District Court denied Stuart's motion on the basis that Stuart failed to make a timely factual record regarding prejudice and, even considering the untimely affidavits, failed to make a persuasive showing of prejudice.

¶9 Thereafter, Stuart pled guilty to the DUI charge, reserving his right to appeal the speedy trial issue. The District Court sentenced Stuart, stayed execution of the sentence pending appeal and entered judgment. Stuart appeals.

¶10 Did the District Court err in denying Stuart's motion to dismiss for lack of speedy trial?

¶11 Whether a defendant has been denied a speedy trial is a question of law. This Court reviews a district court's conclusions of law to determine whether the interpretation of the law is correct. *State v. Johnson*, 2000 MT 180, ¶ 13, 300 Mont. 367, ¶ 13, 4 P.3d 654, ¶ 13.

¶12 The United States Supreme Court established the framework for speedy trial analysis in *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, which we adopted in *State v. Steward* (1975), 168 Mont. 385, 388-89, 543 P.2d 178, 181. While we recently clarified our approach to speedy trial issues in *City of Billings v. Bruce* (1998), 290 Mont. 148, 965 P.2d 866, we retained *Barker's* four-factor test for weighing claims of violations of the Sixth Amendment right to speedy trial: the length of delay from the time charges are filed until the defendant's trial date; the reason for delay; whether the defendant's right to speedy trial has been timely asserted; and whether the defendant has

been prejudiced by the delay. *Bruce*, ¶ 19.

¶13 In the present case, it is undisputed that the delay from the time charges were filed until Stuart's trial date was greater than 200 days. Thus, further speedy trial analysis is warranted. *Bruce*, ¶ 55. It also is undisputed that Stuart timely asserted his right to speedy trial. As a result, only the reason for delay and prejudice factors are at issue.

¶14 The first focus of Stuart's appeal is the second factor in speedy trial analysis: the reason for delay. The District Court attributed 245 days of delay to the State on the basis that amount of time was either institutional or caused by the prosecution. Because it attributed less than 275 days to the State, the court determined the burden was on Stuart to demonstrate he had been prejudiced by the delay. *See Bruce*, ¶ 56.

¶15 Stuart argues, however, that the maximum time properly attributable to him is 49 days, leaving at least 327 days attributable to the State and shifting the burden to the State. *See Bruce*, ¶ 56. The State concedes the District Court's apportionment of delay was incorrect and that, under *Bruce*, it bears the burden of showing Stuart was not prejudiced by the delay.

¶16 The primary focus of Stuart's appeal is the fourth factor in speedy trial analysis: prejudice to the defense. In weighing the prejudice factor, we consider three interests which the right to speedy trial is designed to protect: (1) avoiding oppressive pretrial incarceration; (2) minimizing the anxiety of the accused; and (3) avoiding impairment of the defense. *Bruce*, ¶ 68. Where the State has the burden, its case against prejudice

> should take into consideration, but need not include, all three traditional bases for prejudice: . . . . In considering whether the State has met its burden, the district court should take into consideration the fact that direct proof of a defendant's state of mind may not always be possible, and that the State's ability to anticipate the nature of the defendant's defense may vary from case to case. Therefore, there may be cases where the State can satisfy its burden without demonstrating a lack of prejudice based on each consideration.

*Bruce, ¶ 56. The burden shifts to the defense to prove prejudice "[o]nce the State has demonstrated lack of prejudice based on one or more of these considerations." Bruce, ¶ 56.*

¶17 We now consider the three prejudice factors on the basis of the record before us. Regarding the first, the State contended oppressive pretrial incarceration was avoided

because, as the record established, Stuart was released on bail the day after his arrest and was not otherwise incarcerated prior to trial.

¶18 As to the second prejudice factor, minimizing the anxiety of the accused, a certain amount of anxiety and concern is inherent in being accused of a crime. *State v. Olmsted*, 1998 MT 301, ¶ 57, 292 Mont. 66, ¶ 57, 968 P.2d 1154, ¶ 57 (citations omitted). We also recognized in *Bruce*, ¶ 56, that the State may not be able to present direct proof of the defendant's state of mind.

¶19 In the present case, the record reflects that Stuart is a commercial driver. In that regard, the State presented Stuart's certified driving record to establish that Stuart had not lost his driving privileges and, indeed, his ability to earn a living had not been affected by the delay.

¶20 Prejudice to the defense is the most important of the three prejudice factors because "the inability of the defendant adequately to prepare his case skews the fairness of the entire system." *Bruce*, ¶ 19. In arguing this factor, the State presented the Defendant's Witness List Stuart filed on February 23, 1999, before the first scheduled trial date, indicating he was the only witness he might call at trial other than those listed by the State. The State argued in that regard that, since no additional witnesses had been located by more than four months after the DUI charge was filed, none was likely to turn up or, if they did, they likely would be of minimal value to Stuart. Finally, the State observed that the arresting officer's memory was unlikely to have dimmed and, indeed, that the officer's testimony on both direct and cross-examination had been preserved during the suppression hearing in the District Court in July of 1999.

¶21 Applying the *Bruce* principles to the State's demonstration regarding whether Stuart was prejudiced, we conclude the State met its burden of overcoming the presumption of prejudice. As set forth above, the State's proof took "into consideration . . . all three traditional bases for prejudice." *See Bruce*, ¶ 56. While unable to present "direct proof of [Stuart's] state of mind" and limited in its "ability to anticipate the nature of the defendant's defense" (*see Bruce*, ¶ 56), the State's evidence mitigating any anxiety or concern over employment during the delay, and its showing of the unlikelihood of prejudice to the defense--because of Stuart's limited witness list and the availability of the arresting officer's preserved testimony--was adequate to overcome the presumption of prejudice resulting from the length of delay attributable to the State. Moreover, the State affirmatively established the lack of oppressive pretrial incarceration. Because a

demonstration of lack of prejudice "based on one or more of [the prejudice] considerations" is, in and of itself, sufficient to shift the burden to the defendant to demonstrate prejudice (*see Bruce*, ¶ 56), the State met its burden against prejudice without any additional showing. Consequently, the burden of proof that prejudice occurred shifted to Stuart.

¶22 In his District Court brief on the motion to dismiss, Stuart conceded there had been no oppressive pretrial incarceration. With regard to anxiety suffered by the accused, his counsel stated Stuart had been under restrictions of his liberty set in conditions for bail and that "[h]e has had to suffer under the oppressive weight of a charge filed against him which he can neither prove nor disprove without a trial." Counsel further stated the charges resulted in a social stigma and Stuart had been placed in limbo as to his employment as a commercial truck driver. Nothing at all was submitted to support counsel's statements, however, and statements of counsel are not evidence. *See Delaware v. K-Decorators, Inc.*, 1999 MT 13, ¶ 51, 293 Mont. 97, ¶ 51, 973 P.2d 818, ¶ 51 (citation omitted). Nor was a hearing requested on the speedy trial motion at which Stuart could have presented testimony in support of his claim of prejudice. In any event, the referenced anxiety and concern does not rise above that inherent in being accused of a crime (*see Olmsted*, ¶ 57), except, perhaps, as to his employment having been placed in limbo. In this latter regard, Stuart later conceded that that statement was incorrect and, in fact, that he had received full-time employment as a commercial truck driver approximately six months after the DUI charge had been filed.

¶23 Even assuming arguendo, however, that counsel's statements could be considered standing alone, they do not establish prejudice because they were addressed by the State. One such statement suggested the delay resulted in his inability to locate potentially exculpatory witnesses to his driving on the night in question. In this regard, the record reflects that no such witnesses had been found four months after the event in question; moreover, delay would have provided more--not less--time to locate witnesses. Counsel also contended the arresting officer's memory may have become blurred with the passage of time. As the State pointed out, however, the officer's testimony had been preserved. Stuart simply did not meet his burden of establishing prejudice under any of the three prejudice factors. Consequently, we conclude the District Court did not err in denying Stuart's motion to dismiss for lack of speedy trial.

¶24 After the District Court's decision, Stuart filed a Motion to Reconsider. The two bases for the motion were that the court had erred by attributing 90 days of delay to Stuart and

the presentation of affidavits purporting to establish prejudice. The District Court ultimately ruled that the asserted error in allocating the delay was inconsequential because its earlier order had determined that, without regard to which party had the burden on prejudice, no prejudice had been established. With regard to the affidavits, the court concluded the affidavits were untimely and, in any event, were unpersuasive in showing prejudice.

¶25 Because it is now undisputed that the State bore the prejudice burden, we focus only on the submitted affidavits and, in doing so, we agree with the District Court that they were untimely. Stuart cites to no authority under which a party may wait until an adverse ruling on his or her motion and then come forward in an effort to make a factual record in support of the motion with evidence under that party's control at all times.

¶26 Even considering the affidavits, Stuart's states as follows, in its entirety:

1. That I am the Defendant in the above titled case.

2. That I have suffered from the delay in my right to a speedy trial in the following ways:

a. I have had restrictions placed on my freedom of travel, in that if I wish to leave the State, I must first obtain permission of this Court. I have a son who lives in Idaho, and in order to visit him must obtain approval from the Court.

b. I have been denied the freedom to associate with my friends and co-workers, should they decide to meet in any establishment that sells alcohol as its primary source of business.

c. I have not been able to take my wife dancing in any establishment that serves alcohol.

d. I have suffered from the anxiety that if I am falsely convicted, I will lose my ability to make a living.

e. I have also suffered in that my faith in the justice system is being reduced by each day of delay.

f. I have lost many nights of sleep, worrying about the possible outcome of this case.

Similarly, Stuart's wife's affidavit states, in its entirety:

1.  That I am the wife of the Defendant in the above titled case.

2.  That I have suffered as well, due to the delay in trial.

3.  We had to postpone our marriage until March of this year, hoping that the case would have been resolved by then.

4.  I have shared in the anxiety of my husband, while waiting for this case to be resolved.

5.  I worry about the impact of a conviction on my husband on the future of our family, especially with the loss of his job.

Read in their entirety, the affidavits address the second prejudice factor, minimizing anxiety, and they do not transcend the generic anxiety inherent in being an accused discussed in *Olmsted*. Nothing in the affidavits even attempts to meet the "most serious" of the three prejudice factors (*see Bruce*, ¶ 19), prejudice to the defense.

¶27 No single factor of the *Barker* analysis is determinative, and each must be weighed in light of the facts of the case. *Bruce*, ¶ 75 (citations omitted). As discussed above, the delay in this case was sufficient to trigger speedy trial analysis, Stuart asserted his right to speedy trial in a timely manner, and the State bore the initial burden regarding the delay. Considering the institutional nature of the delay and Stuart's failure to establish prejudice once the State met its burden, we hold the District Court correctly concluded Stuart was not denied his right to a speedy trial.

¶28 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER