No. 05-442

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 171

_____

SANDRA CROMWELL,

        Plaintiff and Appellant,

   v.

VICTOR SCHOOL DISTRICT NUMBER 7,

        Defendant, Respondent and Cross-Appellant.

_____

APPEAL FROM:    District Court of the Twenty-First Judicial District,
                       In and for the County of Ravalli, Cause No. DV 04-111
                       The Honorable Jeffrey H. Langton, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Richard R. Buley, Tipp & Buley, Missoula, Montana

        For Respondent:

                Robert Stutz and Debra A. Silk, Montana School Boards Association,
                Helena, Montana

_____

Submitted on Briefs:  March 29, 2006

Decided:  July 25, 2006

Filed:

_____
                       Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Sandra Cromwell (Cromwell) appeals from a decision of the Twenty-First Judicial District, Ravalli County, awarding no damages after finding that she had been wrongfully discharged from employment by Victor School District Number 7 (School District). The School District cross-appeals the District Court's determination that it wrongfully discharged Cromwell. We affirm in part, reverse in part, and remand for further proceedings.

¶2 We review the following issues on appeal:

¶3 Whether the District Court properly determined that the School District wrongfully discharged Cromwell.

¶4 Whether the District Court properly awarded Cromwell no damages.

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 The School District hired Cromwell as an administrative assistant in September of 1998. The School District categorized Cromwell as a "classified employee" upon hiring and provided Cromwell with a classified employee handbook. The classified employee handbook stated that all "employees must satisfactorily complete a probationary period of six months after which the employee will attain permanent status." Cromwell's probationary period of employment ended in March of 1999.

¶6 The School District promoted Cromwell to the position of business manager effective July 1, 1999, but she remained a classified employee. Cromwell and the School District signed a document entitled "Business Manager 1999-2000" on September 16, 1999. The document stated that "the District has and does hereby employ the Business

2

Manager on a full-time year-round basis, commencing on July 1, 1999." The document explained certain terms of Cromwell's employment such as salary, fringe benefits, and sick leave. The document did not explicitly state an end date for her term of employment. Cromwell signed similar documents each of the next three years.

¶7    The School District adopted a new classified employee policy on October 9, 2001. The new policy stated that each "classified employee hired on or after October 9, 2001 shall be employed under annual contracts of a specified term within the meaning of [S]ection 39-2-912, MCA." Section 39-2-912(2), MCA, exempts an employment agreement covered by a written contract for a specified term from the requirements of the Wrongful Discharge From Employment Act (WDEA), §§ 39-2-901 to 915, MCA. An employee covered by the WDEA may not be discharged after completing a probationary period except for good cause. *See* § 39-2-904(1)(b), MCA.

¶8    The School District notified Cromwell on June 12, 2003, that the school board voted not to renew her contract and terminated Cromwell from employment. The School District granted Cromwell a severance package that matched her salary through August 31, 2003. Cromwell earned an annual salary of $33,280 at the time of her termination.

¶9    Cromwell filed an action for wrongful termination on March 4, 2004. The District Court held a bench trial on April 4, 2005. Cromwell provided the only testimony at trial. Cromwell testified that she worked for the School District as a permanent employee according to the terms of the classified employee handbook. Cromwell testified that she did not believe the business manager documents represented annual contracts for specified terms, but merely represented agreements concerning her salary.

¶10 The fifty-two year old Cromwell testified that she had difficulty finding new employment after being discharged by the School District. Cromwell attempted to find work by signing up with Montana Job Services, took various tests that evaluated her computer and typing proficiency, and sent out numerous resumes to positions advertised in local papers. She testified that these postings were for bookkeepers in the private sector and as land title examiners in Ravalli County. Cromwell did not keep records of her job search. The School District's counsel pressed Cromwell on cross-examination why she had not applied for a number of positions that had been recently posted in the paper, such as a position as a financial analyst, and questioned why she failed to visit certain websites while searching for employment. Cromwell responded that she had not been monitoring the paper since finding her new employment, that she did not possess the qualifications required for a financial analyst, and that she relied on newspapers and the job service to find local job postings rather than the internet. As a result, she claims that a limited number of jobs were available in her area.

¶11 Cromwell initially focused her job search in Ravalli County, but eventually widened her search to include Missoula, approximately 35 miles from her home in Victor. Cromwell eventually found a job in Missoula three weeks before her trial started with a construction company where her son also works. She earns $10 an hour and she works approximately 27 hours per week.

¶12 The School District conceded at trial that it did not terminate Cromwell's employment for cause. The School District contended instead that Cromwell's employment agreement did not fall within the scope of the WDEA. It asserted that the

business manager documents signed by Cromwell and the School District constituted written agreements for specified terms under § 39-2-912(2), MCA.

¶13　The District Court concluded that the School District had wrongfully discharged Cromwell as set forth in § 39-2-904(1)(b), MCA.  The business manager documents that Cromwell signed after attaining permanent employee status did not represent written employment contracts for a specific term under § 39-2-912(2), MCA.  The court found that according to the terms of the employment handbook Cromwell had become a permanent employee after successfully completing the six month probationary period. The School District could not discharge Cromwell without cause.

¶14　The District Court awarded Cromwell no damages, however, because it concluded that Cromwell did not exercise reasonable diligence in seeking new employment after being terminated by School District.  The District Court reasoned that Cromwell neglected the Missoula job market, failed to keep records of her job search, and failed to use certain internet job search resources.  The District Court also held that Cromwell failed to present sufficient evidence that reasonable employment opportunities were not available in the Hamilton-Missoula job market.  It further determined that the School District had provided a relatively generous severance package that matched her salary for a period of 11 weeks, within which time Cromwell should have been able to find suitable work.  This appeal followed.

DISCUSSION

**¶15 Whether the District Court improperly determined that the School District wrongfully discharged Cromwell.**

¶16 The construction and interpretation of a contract constitutes a question of law for the court to decide. *Chase v. Bearpaw Ranch Ass'n*, 2006 MT 67, ¶ 14, 331 Mont. 421, ¶ 14, 133 P.3d 190, ¶ 14. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *Chase*, ¶ 14. We review any findings of fact made by a district court to support its legal conclusions to determine if they are clearly erroneous. *See Watson v. Dundas*, 2006 MT 104, ¶ 17, 332 Mont. 164, ¶ 17, ___P.3d___, ¶ 17.

¶17 The School District asserts that it could terminate Cromwell's employment without cause because Cromwell's employment agreement fell within the exemption to the WDEA provided by § 39-2-912(2), MCA. The School District maintains that the business manager documents signed by Cromwell constituted written contracts of employment for a specific term under § 39-2-912(2), MCA.

¶18 Cromwell responds that she worked for the School District as a permanent employee according to the terms of the classified employee handbook. Cromwell contends that the business manager documents represented mere agreements concerning her yearly salary. She points out that the business manager documents do not explicitly state an ending date for her term of employment.

¶19 We agree with Cromwell that § 39-2-912(2), MCA, does not apply. The School District's position contradicts the plain language of its own classified employee

6

handbook. The classified employee handbook that the School District provided to Cromwell upon hiring states that after a six month probationary period "the employee will attain permanent status." According to the terms of the School District's own handbook, Cromwell had attained status as a permanent employee long before she signed the first business manager document on September 16, 1999. The new classified employment handbook does not explicitly address the status of employees such as Cromwell. The handbook does implicitly support the position that Cromwell worked as a permanent employee, however, as it states that only employees "hired on or after October 9, 2001 shall be employed under annual contracts of a specified term." The School District hired Cromwell in September of 1998.

¶20 The business manager documents remain ambiguous concerning the term of employment for Cromwell. We interpret a contract against the party who caused the uncertainty to exist. *Watson*, ¶ 27. The School District drafted the documents that do not explicitly state a specified term of employment. Cromwell testified that she understood the business manager documents as mere agreements concerning her yearly salary. Cromwell already had attained status as a permanent employee and the accompanying protections of the WDEA. *See* § 39-2-904, MCA. We will not interpret the ambiguous provisions of the business manager documents to modify Cromwell's employment agreement and deprive her of the protections of the WDEA. We conclude that the business manager documents do not represent written contracts for a specified term under § 39-2-912(2), MCA. As a result, the District Court correctly determined that the School District wrongfully discharged Cromwell.

7

¶21 **Whether the District Court improperly awarded Cromwell no damages.**

¶22 A court may award damages to a wrongfully discharged employee based on lost wages for a period not to exceed four years less any amount that the employee could have earned with reasonable diligence. Section 39-2-905(1), MCA. A district court possesses the discretion to determine the amount of damages recoverable under § 39-2-905, MCA. *Weber v. State* (1992), 253 Mont. 148, 153, 831 P.2d 1359, 1362. We review a district court's discretionary rulings for an abuse of discretion. *Jarvenpaa v. Glacier Elec. Co-op. Inc.*, 1998 MT 306, ¶ 12, 292 Mont. 118, ¶ 12, 970 P.2d 84, ¶ 12.

¶23 The District Court made no finding of fact regarding Cromwell's diligence in finding new employment. The District Court instead based its award of no damages on its legal conclusion that Cromwell had "failed to present sufficient evidence that reasonable employment opportunities were not available to her in the Hamilton-Missoula job markets." We review legal conclusions for correctness. *In re Conservatorship of Kloss*, 2005 MT 39, ¶ 7, 326 Mont. 117, ¶ 7, 109 P.3d 205, ¶ 7.

¶24 Cromwell argues that the court improperly concluded that she failed to produce sufficient evidence that reasonable employment opportunities were not available in Ravalli County when she presented the only evidence regarding the availability of other jobs through her testimony at trial. Cromwell testified that she sought employment through the job service in Ravalli County, she signed up with a temporary employment agency, and she applied to numerous openings listed in the local paper. Cromwell's testimony represents the only evidence concerning the availability of job opportunities during her period of unemployment.

8

¶25 Once the District Court determined that Cromwell had been wrongfully discharged, the burden shifted to the School District to plead Cromwell's lack of reasonable diligence in finding new employment as an affirmative defense. *Martinell v. Montana Power Co.* (1994), 268 Mont. 292, 322-23, 886 P.2d 421, 440. As an affirmative defense, the School District, rather than Cromwell, had the burden of proving Cromwell's failure to mitigate. *Martinell*, 268 Mont. at 322-23, 886 P.2d at 440; *E.C.A. Environ. Management v. Toenyes* (1984), 208 Mont. 336, 350, 679 P.2d 213, 220. In this case, however, the District Court appears to have reversed the burden as evidenced by its conclusion of law that Cromwell "failed to present sufficient evidence that reasonable employment opportunities were not available to her in the Hamilton-Missoula job markets."

¶26 The School District presented no witnesses to support its contention that Cromwell had failed to exercise reasonable diligence in failing to find replacement employment. The School District elected instead to attempt to impeach Cromwell on cross-examination through limited evidence of job opportunities listed in local newspapers that existed at the time of trial. These listings represented jobs available at the time of trial when Cromwell already had found a new job and had stopped looking for employment. The School District presented no evidence that these comparable jobs were available during the period when Cromwell actually was looking for work.

¶27 Cromwell further contends that the District Court improperly relied on the fact that she focused her job search primarily in Ravalli County and did not seek employment more diligently in Missoula, approximately 35 miles from her home in Victor.

9

Cromwell's initial failure to explore the Missoula job market should not have foreclosed completely an award of damages. Even if Cromwell immediately had found comparable employment in Missoula, she still would be required to drive 70 miles round trip as a result of being wrongfully discharged from her job with the School District in Ravalli County. The law does not require a wrongfully terminated employee to move to another locality to find employment. *Martinell,* 268 Mont. at 321, 886 P.2d at 439. The costs and time associated with a daily commute to a different locality could support an award of damages.

¶28 Cromwell did concede on cross-examination that she had failed to take advantage of certain internet resources in her job search. It is unclear once again, however, whether these internet resources contained job opportunities that were listed at the time that Cromwell should have been looking for a job. It further is unclear whether Cromwell failed to pursue any of the job prospects contained in those internet resources that may have been available at the time that Cromwell should have been looking for a job. Although Cromwell admittedly neglected to use these internet resources, this omission would serve to reduce any award of damages. This omission should not serve to preclude entirely an award of damages in light of the uncertainty regarding what job opportunities might have been available through these internet resources and at what time.

¶29 Cromwell now works an average of 27 hours a week in Missoula for $10 an hour, a significant reduction from her full-time job with the School District that paid her an annual salary of $33,280. The fact that Cromwell now works fewer hours for lower pay and must travel 35 miles from home in order to work would support an award of damages

10

in the absence of evidence that she failed to exercise reasonable diligence in seeking new employment. The District Court made no finding that Cromwell failed to exercise reasonable diligence. We agree with Cromwell that the District Court erred by concluding as a matter of law that she failed to exercise reasonable diligence based on the evidence at trial. The District Court correspondingly abused its discretion in awarding no damages.

¶30 We affirm in part, reverse in part, and remand this matter to the District Court for the limited purpose of having the court make findings of fact and enter conclusions of law regarding the appropriate amount of damages based on the record presented at the previous trial.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE