FILED

08/30/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0379

DA 21-0379

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 169

JANE TIMPANO,

      Plaintiff and Appellant,

  v.

CENTRAL MONTANA DISTRICT
SIX HUMAN RESOURCES DEVELOPMENT COUNCIL, INC.,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and For the County of Fergus, Cause No. DV 2018-87
Honorable Jon A. Oldenburg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Torger Oaas, Attorney at Law, Lewistown, Montana

      For Appellee:

      Jean E. Faure, Jason T. Holden, Faure Holden Attorneys at Law, P.C., Great
Falls, Montana

             Submitted on Briefs:  March 2, 2022

                    Decided:  August 30, 2022

Filed:

                          _____
                                Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1    Jane Timpano appeals the July 2021 judgment of the Montana Tenth Judicial District Court, Fergus County, granting summary judgment to her former employer, Central Montana District Six Human Resources Development Council, Inc. (HRDC), on her asserted wrongful discharge claims under the Montana Wrongful Discharge From Employment Act (WDEA), Title 39, chapter 2, part 9, MCA.  We address the following restated issue:

> *Whether the District Court erroneously granted summary judgment to Timpano's former employer on the damages element of her wrongful discharge claims due to failure to mitigate damages in accordance with § 39-2-905(1), MCA?*

Reversed and remanded.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    HRDC employed Timpano full time in Lewistown, Montana, for approximately 20 years, most recently as a full-time Program Manager at the annual salary of $42,265.60, plus fringe benefits.  Timpano holds a bachelor's degree in elementary education and during her HRDC tenure also regularly performed various part-time support functions in her husband's retail gun business, usually on weeknights and weekends, for which she received no employment income.  Her gun shop functions included, *inter alia*, performing various record and bookkeeping tasks and assisting her husband with out-of-town weekend gun shows approximately 15 weekends per year.

¶3    On June 30, 2017, HRDC discharged Timpano from employment, on the apparent ground of perceived unsatisfactory performance, despite the fact that it gave her

satisfactory ratings on her most recent written performance appraisal dated May 15, 2017, for the period of April 2016 through April 2017.[1] She was almost 65 years old at the time of the unexpected discharge. She later testified that she had previously been "thinking about" retiring at the end of 2017 at age 65 because she "thought that might be a good . . . time to retire."

¶4 Following her discharge from HRDC on June 30, 2017, Timpano neither applied, nor even searched, for any alternative full-time paid employment. She later testified that she wanted to return to paid employment, but only on a part-time basis so that she could more conveniently perform her unpaid gun shop assistance functions on weekdays, particularly on Fridays, rather than weeknights. At some point later in 2017, she inquired about an available teacher's aide position with the local *Head Start* program in Lewistown, but then did not ultimately apply for the position because it was a Wednesday-Thursday-Friday position that would interfere with her desired weekday performance of her unpaid gun shop functions.

¶5 On June 27, 2018, over a year after her discharge from HRDC, Timpano filed district court wrongful discharge claims pursuant to §§ 39-2-904(1)(b), (c), and -905(1), MCA, alleging that HRDC discharged her without "good cause," as defined by § 39-2-903(5), MCA, and in violation of a specified provision of its own personnel policy. Approximately six weeks later, on August 13, 2018, she applied for part-time employment

---

[1] The record on appeal is unclear as to the reason given for the discharge, whether verbally or in writing, if any. The reason for the discharge is not at issue on appeal.

as a substitute teacher with the Lewistown School District. The substitute teacher position involved unscheduled, on-call work assigned by the district to persons on its substitute teacher roster who were available when called as the need arose. Because she was seeking only part-time employment, Timpano did not inquire as to whether the school district had any full-time professional or "paraprofessional" positions available for which she might be qualified if interested. The school district immediately accepted and approved her substitute teacher application in August 2018, after which she began accepting various substitute teacher assignments on a spot-work basis when called. She later testified, however, that she often notified the school district in advance to avoid conflicts with her weekly gun shop functions, particularly on Fridays, so that the district would not call her from its substitute teacher roster on those occasions. Following her discharge from HRDC, Timpano neither applied for, nor even searched for, any comparable full-time employment that might have been available in the Lewistown area. The only alternative paid employment for which she applied was the part-time, spot-work substitute teacher position with the Lewistown School District.

¶6    On February 26, 2021, HRDC filed a motion for summary judgment on Timpano's asserted wrongful discharge claims on the asserted ground that the damages elements of those claims failed as a matter of law on the M. R. Civ. P. 56 factual record because she failed to reasonably mitigate her claimed damages by seeking comparable full-time employment after HRDC discharged her. In July 2021, the District Court granted summary

4

judgment to HRDC and accordingly dismissed Timpano's asserted wrongful discharge claims with prejudice. Timpano timely appeals.

## STANDARD OF REVIEW

¶7 We review district court summary judgment rulings de novo for conformance to the applicable standards specified in M. R. Civ. P. 56. *Dick Anderson Constr., Inc. v. Monroe Prop. Co.*, 2011 MT 138, ¶ 16, 361 Mont. 30, 255 P.3d 1257. Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3). A genuine issue of material fact is a fact materially inconsistent with proof of an essential element of a claim or defense at issue. *Mt. W. Bank, N.A. v. Mine & Mill Hydraulics, Inc.*, 2003 MT 35, ¶ 28, 314 Mont. 248, 64 P.3d 1048. The party seeking summary judgment has the initial burden of showing a complete absence of any genuine issue of material fact on the Rule 56 record and that the movant is accordingly entitled to judgment as a matter of law. *Weber v. Interbel Tel. Coop.*, 2003 MT 320, ¶ 5, 318 Mont. 295, 80 P.3d 88.[2] The burden then shifts to the opposing party to either show the existence of a genuine issue of material fact precluding summary judgment or that the moving party is nonetheless *not* entitled to judgment as a matter of law. *Osterman v. Sears, Roebuck & Co.*, 2003 MT 327, ¶ 17, 318 Mont. 342, 80 P.3d 435 (citing *Bruner v. Yellowstone Cty.*, 272 Mont. 261, 264, 900 P.2d 901, 903 (1995)).

---

[2] The Rule 56 factual record includes "the pleadings, the discovery and disclosure materials on file, and any [supporting] affidavits" submitted. M. R. Civ. P. 56(c)(3).

¶8 To meet the responsive Rule 56 burden of demonstrating that a genuine issue of material fact precludes summary judgment, the non-moving party must in proper form, and by more than mere denial, speculation, or pleading allegation, "set out specific facts" showing the existence of a genuine issue of material fact. M. R. Civ. P. 56(e)(2). *See also Grimsrud v. Hagel*, 2005 MT 194, ¶ 14, 328 Mont. 142, 119 P.3d 47; *Osterman*, ¶ 34; *Old Elk v. Healthy Mothers, Healthy Babies, Inc.*, 2003 MT 167, ¶¶ 15-16, 316 Mont. 320, 73 P.3d 795; *Klock v. Town of Cascade*, 284 Mont. 167, 174, 943 P.2d 1262, 1266 (1997); *Mysse v. Martens*, 279 Mont. 253, 262, 926 P.2d 765, 770 (1996); *Eitel v. Ryan*, 231 Mont. 174, 178, 751 P.2d 682, 684 (1988). The court must view the Rule 56 factual record in the light most favorable to the non-moving party, with all reasonable inferences drawn in favor thereof. *Weber*, ¶ 5; *Gamble Robinson Co. v. Carousel Properties*, 212 Mont. 305, 312, 688 P.2d 282, 286-87 (1984). The court has no duty, however, to anticipate or speculate regarding contrary material facts. *Gamble*, 212 Mont. at 312, 688 P.2d at 287 (internal citations omitted). Whether a genuine issue of material fact exists or whether a party is entitled to judgment as a matter of law are conclusions of law reviewed de novo for correctness. *Ereth v. Cascade Cty.*, 2003 MT 328, ¶ 11, 318 Mont. 355, 81 P.3d 463. *See also Speer v. Mont. Dep't of Corrections*, 2020 MT 45, ¶ 17, 399 Mont. 67, 458 P.3d 1016 (applications and conclusions of law are subject to de novo review for correctness).

**DISCUSSION**

¶9 *Whether the District Court erroneously granted summary judgment to Timpano's former employer on the damages element of her wrongful discharge claims due to failure to mitigate damages in accordance with § 39-2-905(1), MCA?*

6

¶10    As pertinent here, the essential elements of proof of a WDEA wrongful discharge claim are:    (1) a "discharge" from non-probationary employment as defined by § 39-2-903(2), (3), and -904(3), MCA (defining "discharge," "employee," and "at-will" nature of employment during probationary period); (2) a discharge without "good cause," as defined by § 39-2-903(5), MCA, or in material violation of an "express provision of [the employer's] own written personnel policy"; and (3) the amount of "lost wages" and any "fringe benefits" as defined by § 39-2-903(4) and (7), MCA, incurred by the employee as a result of the wrongful discharge.  *See* §§ 39-2-904(1)(b), (c), and -905(1), MCA; *Moore v. Imperial Hotels Corp.*, 1998 MT 248, ¶ 28, 291 Mont. 164, 967 P.2d 382 (evidentiary burden on wrongful discharge claimant includes proof of causation of damages, *inter alia*). The WDEA imposes a number of limitations, however, on the amount a wrongfully discharged employee may recover, including a four-year cap on recoverable lost wages and fringe benefits, and reduction of any award for lost wages by the amount of any "interim earnings" of the employee:

[A]    "*derived from* any new kind, nature, or type of work, hire, contractor status, or employment that did not exist at the time of discharge"; and

[B]    "*including* amounts the employee could have earned with reasonable diligence from the work, hire, contractor status, or employment."

Sections 39-2-905(1) and -913, MCA (emphasis added).[3]  "Following any verdict or award in favor of the discharged employee, the district court shall" further deduct from "the

_____

[3] However, "[b]efore interim earnings are deducted from . . . the amount awarded for lost wages," "there must be deducted from the interim earnings any reasonable amounts expended by the employee in searching for, obtaining, or relocating to new employment." Section 39-2-905(1)-(2), MCA.

amount awarded for lost wages" any "monetary payments, compensation, or benefits the employee received arising from or related to the discharge, including unemployment compensation or benefits and early retirement pay." Section 39-2-905(2), MCA.[4]

¶11 As applied to the M. R. Civ. P. 56 evidentiary record here, at issue is the application and effect of the provision of § 39-2-905(1), MCA, requiring "deduct[ion] from" any resulting lost wages award of any "amounts the employee *could have earned with reasonable diligence* from" other "work, hire, contractor status, or employment." (Emphasis added.) Commonly known as the mitigation of damages requirement of the WDEA, this limiting provision implicitly imposes a duty on a wrongfully discharged employee "to undertake reasonable efforts to find replacement employment to mitigate [the] damages" resulting from the wrongful discharge. *Bryden v. Lakeside Ventures, LLC*, 2009 MT 320, ¶ 28, 352 Mont. 452, 218 P.3d 61 (construing § 39-2-905(1), MCA). *See also* § 39-2-905(1), MCA (referencing "amounts the employee could have earned with reasonable diligence from [other] work, hire, contractor status, or employment"); *Cromwell v. Victor Sch. Dist. No. 7*, 2006 MT 171, ¶¶ 23-29, 333 Mont. 1, 140 P.3d 487 (discussing duty to mitigate damages in context of a WDEA wrongful discharge claim to hold that district court erroneously concluded as a matter of law on the trial evidence that the discharged employee failed to exercise reasonable diligence to find new employment).

---

[4] The WDEA also expressly preempts and precludes a wrongfully discharged employee from recovering any non-economic damages, "or any other form of damages" otherwise recoverable in contract or tort, whether as an element of damages on a WDEA wrongful discharge claim or by independent claim otherwise cognizable in tort or contract. Sections 39-2-905(4) and -913, MCA.

The nature and effect of the duty to mitigate damages implied in § 39-2-905(1), MCA, are similar to and modeled on those aspects of the pre-WDEA common law duty that similarly required a wrongfully discharged employee to make a reasonably diligent effort to find and obtain other comparable employment.[5]  *See Martinell v. Mont. Power Co.*, 268 Mont. 292, 321, 886 P.2d 421, 439 (1994) ("terminated employee has a duty to exercise ordinary diligence to procure other employment"); *Dawson v. Billings Gazette*, 223 Mont. 415, 417, 726 P.2d 826, 828 (1986) (wrongfully discharged employee "must exercise ordinary diligence to procure other employment"); *Flanigan v. Prudential Fed. Sav. & Loan Ass'n*, 221 Mont. 419, 431-32, 720 P.2d 257, 264-65 (1986) (discussing scope of duty to mitigate in wrongful discharge context); *Miller v. Yellowstone Irr. Dist.*, 91 Mont. 538, 540-41, 9

---

[5] Prior to enactment of the 1987 WDEA, cognizable claims for wrongful discharge from employment were predicated on proof that the employer discharged the employee in tortious or contract breach of the implied common law contract duty of good faith and fair dealing. *See* § 39-2-101, MCA (defining "employment" as "a contract by which one, who is called the employer, engages another, who is called the employee, to do something for the benefit of the employer or a third person"); *Flanigan v. Prudential Fed. Sav. & Loan Ass'n*, 221 Mont. 419, 423-28, 720 P.2d 257, 259-62 (1986); *Dare v. Mont. Petroleum Mktg. Co.*, 212 Mont. 274, 279-83, 687 P.2d 1015, 1018-20 (1984); *Gates v. Life of Mont. Ins. Co.*, 196 Mont. 178, 184-85, 638 P.2d 1063, 1066-67 (1982). *See also Miller v. Yellowstone Irr. Dist.*, 91 Mont. 538, 540-42, 9 P.2d 795, 796-97 (1932) (pre-WDEA contract-based wrongful discharge claim). The common law duty to mitigate damages, from which the similar WDEA duty to mitigate damages derives, applies equally in contract and in tort. *Bronken's Good Time Co. v. J.W. Brown and Assocs.*, 203 Mont. 427, 432, 661 P.2d 861, 864 (1983) (duty of non-breaching party to "act reasonably under the circumstances so as not to unnecessarily enlarge damages caused by" the subject breach of contract—internal citations omitted); *Spackman v. Ralph M. Parsons Co.*, 147 Mont. 500, 505, 414 P.2d 918, 921 (1966) (duty to mitigate damages caused by tortious conduct of another); *A. T. Klemens & Son v. Reber Plumbing & Heating Co.*, 139 Mont. 115, 125, 360 P.2d 1005, 1010 (1961) (contract duty of non-breaching party to mitigate damages—citing *Miller*); *Sweeney v. Mont. Cent. Ry. Co.*, 25 Mont. 543, 550-51, 65 P. 912, 914 (1901) (tort claimant duty "to use reasonable care, skill and diligence" under the circumstances to mitigate damages caused by tortious conduct of another); *Kleinclaus v. Marin Realty Co.*, 211 P.2d 582, 585 (Cal. Ct. App. 1949) ("duty to mitigate damages exists alike in cases of breach of contract and tort").

9

P.2d 795, 796 (1932) ("the measure of recovery" on wrongful discharge claim "is the amount [the employee] would have [otherwise] earned" but for the wrongful discharge "less any amount received . . . for services rendered to others or which he might have received by the exercise of due diligence in seeking employment after the date of . . . discharge"—internal citations omitted).

¶12　However, due to the nature of their respective procedural postures and, as here, the manner in which the parties framed the issue on appeal, our WDEA and pre-WDEA duty to mitigate cases have often imprecisely focused on whether, and to what extent, the discharged employee in fact made reasonably diligent efforts to find new employment, rather than the more salient question as to the effect and application of the duty to do so. *See Bryden*, ¶¶ 28, 31, and 38 (discussing duty to mitigate damages in regard to the procedural propriety of default judgment on WDEA claim); *Cromwell*, ¶¶ 22-29 (primarily focusing on the trial evidence and related lack of a "finding of fact regarding [the employee's] diligence in finding new employment" in regard to whether court erroneously concluded that the employee failed to exercise reasonable diligence to find new employment); *Martinell*, 268 Mont. at 320-23, 886 P.2d at 439-40 (focusing on sufficiency of the bench trial evidence to support a finding of fact that the duty to mitigate damages did not require the employee to reapply for other employment with the same employer and whether sufficient evidence of reasonable mitigation efforts supported the ultimate damages determination); *Dawson*, 223 Mont. at 417-20, 726 P.2d at 828-29 (holding trial evidence sufficient to support "zero damages" jury verdict despite a wrongful discharge

finding where employee "had three sources of [other] income from the time he was fired until the time of trial" and that the trial evidence was sufficient to support a jury conclusion that employee "had not done enough to mitigate his damages" based on a choice to not "pursue comparable full-time work"); *Flanigan*, 221 Mont. at 431-32, 720 P.2d at 264-65 (holding that court correctly instructed jury on mitigation of damages and that the trial evidence was sufficient to support a jury conclusion that employee made reasonable efforts to seek other comparable employment despite rejection of employer offer of lesser employment); *Miller*, 91 Mont. at 540-41, 9 P.2d at 796 (holding that court correctly denied employer motion for nonsuit, based on assertion that "there was no proof" that the discharged employee could *not* have "obtained other remunerative employment," because employer had the burden of proving that employee could have obtained other employment to mitigate his or her damages).

¶13     As a threshold matter of law under § 39-2-905(1), MCA, and our similar pre-WDEA jurisprudence, the assertion of the duty to mitigate damages in response to a former employee's wrongful discharge claim is an affirmative defense the employer must specially plead and in regard to which the employer bears the burden of proving that other comparable employment or contract work, for which the discharged employee was qualified, was in fact timely available to the employee if he or she had made reasonably diligent efforts to find and obtain it.  *Cromwell*, ¶¶ 14 and 25-30 (citing *Martinell*, 268 Mont. at 322, 886 P.2d at 440, and *E.C.A. Envtl. Mgmt. Servs. v. Toenyes*, 208 Mont. 336, 350, 679 P.2d 213, 220 (1984)).  *See also* § 39-2-905(1), MCA (referring to "amounts the

11

employee could have earned . . . from [other] work, hire, contractor status, or employment"); *Flanigan*, 221 Mont. at 431-32, 720 P.2d at 264-65 (quoting *Parker v. Twentieth Century-Fox Film Corp.*, 474 P.2d 689, 692 (Cal. 1970)); *Miller*, 91 Mont. at 541, 9 P.2d at 796; *Gierke v. Walker*, 279 Mont. 349, 354-55, 927 P.2d 524, 527 (1996) ("nondefaulting party . . . must act reasonably under the circumstances so as not to unnecessarily enlarge damages caused by [another's] default"); *Billings Clinic v. Peat Marwick Main & Co.*, 244 Mont. 324, 345, 797 P.2d 899, 912 (1990) ("[m]itigation of damages is an affirmative defense for which the burden of proof falls on the party opposing the damages"); M. R. Civ. P. 8(c)(1) (special pleading requirement for affirmative defenses).

¶14 However, for purposes of mitigation of damages, comparable employment does not include that which would require the discharged employee to relocate to another locality or that which is inferior, of a substantially different type or kind, or which has inferior or substantially different compensation or working conditions or requirements. *Cromwell*, ¶¶ 25-30; *Martinell*, 268 Mont. at 321, 886 P.2d at 439; *Dawson*, 223 Mont. at 417-20, 726 P.2d at 828-29; *Flanigan*, 221 Mont. at 431-32, 720 P.2d at 264-65 (upholding district court finding that offered part-time employment as a teller was not comparable to the discharged employee's former full-time employment as an assistant mortgage loan counselor). Within those limitations, the question of whether other comparable employment was in fact timely available to the employee if he or she had made reasonably diligent efforts to find and obtain it is generally a question of fact under the totality of the

record circumstances in each case. *Bryden*, ¶ 31; *Gierke*, 279 Mont. at 354-55, 927 P.2d at 527; *Bronken's Good Time Co. v. J.W. Brown and Associates*, 203 Mont. 427, 433, 661 P.2d 861, 864-65 (1983). *See also Martinell*, 268 Mont. at 320-22, 886 P.2d at 439-40 (holding that substantial evidence supported finding of fact that wrongfully discharged lab technician made reasonable efforts to mitigate her damages despite failure to apply for a multitude of other open positions with the same company or subsidiaries and admission that she did not search for other employment "for extended periods of time"); *Dawson*, 223 Mont. at 417-20, 726 P.2d at 828-29 (holding that, despite conflicting testimony, evidentiary record was sufficient to support a jury determination that other "comparable full-time work" was available with other publications).

¶15     Aside from those preliminary considerations and contrary to the frequent focus of litigants, as here, the dispositive issue under the WDEA and pre-WDEA affirmative mitigation of damages defense is not whether the discharged employee in fact made reasonably diligent efforts to obtain other comparable employment, but whether other comparable employment or work was in fact timely available to the employee, had he or she made reasonably diligent efforts to find and obtain it, thus resulting in amounts which he or she could have earned to reduce lost wages resulting from the wrongful discharge. *See* § 39-2-905(1), MCA (requiring deduction from lost wages of any "amounts" the discharged employee "*could have earned* with reasonable diligence from" other employment or contract work—emphasis added); *Flanigan*, 221 Mont. at 431-32, 720 P.2d at 264-65 (rejecting employer assertion that court erroneously "fail[ed] to reduce" the

13

wrongfully discharged employee's damages by the amount she "*would have received*" had she not rejected the employer's offer of other lesser employment—emphasis added); *Miller*, 91 Mont. at 540-41, 9 P.2d at 796 ("measure of recovery is the amount [employee] would have earned" but for the wrongful discharge "less any amount . . . which he *might have received* by the exercise of due diligence in seeking [other] employment"—emphasis added). Consequently, neither the reasonable availability of other comparable employment, nor the failure of the discharged employee to in fact make reasonably diligent efforts to find and obtain it, are or ever have been a complete bar to the recovery of damages otherwise resulting from a wrongful discharge—the fact that other comparable employment was available to the employee upon reasonably diligent efforts to find and obtain it merely has the effect of reducing, i.e., offsetting, otherwise recoverable damages resulting from the wrongful discharge by the amount he or she "*could have earned*" therefrom. *See* § 39-2-905(1), MCA (emphasis added); *Cromwell*, ¶¶ 14 and 22-30 (remanding for additional factfinding on bench trial record upon holding that court erroneously awarded no damages to wrongfully discharged employee based on an erroneous conclusion of law that the employee "failed to exercise reasonable diligence" to find a new job—court erred because employer "presented no evidence that . . . comparable jobs were available" in the Missoula area 35 miles away and that employee's failure to expand her job search beyond her locality or use available internet resources would not "preclude entirely" a damages award and "serve [only] to reduce" her lost wages award); *Flanigan*, 221 Mont. at 431-32, 720 P.2d at 264-65 (rejecting employer assertion that court

14

erroneously "fail[ed] *to reduce*" the wrongfully discharged employee's damages by the amount she "*would have received*" had she not rejected the employer's offer of other lesser employment—emphasis added); *Miller*, 91 Mont. at 540-41, 9 P.2d at 796 ("measure of recovery is the amount [employee] *would have earned*" but for the wrongful discharge "*less* any amount . . . which he *might have received* by the exercise of due diligence in seeking [other] employment"—emphasis added); *Carnation Co. v. Olivet Egg Ranch*, 229 Cal. Rptr. 261, 267 n.12 (Cal. Ct. App. 1986) ("failure to attempt to mitigate damages will not bar plaintiff entirely from a recovery, but will only prevent the recovery of such damages as *might have been avoided* by reasonable efforts on his part"—citing 25 C.J.S., Damages, § 33—emphasis added); *Kleinclaus v. Marin Realty Co.*, 211 P.2d 582, 585 (Cal. Ct. App. 1949) (distinguishing effect of failure to mitigate damages from effect of common law contributory negligence); *Gottsch Feeding Corp. v. Red Cloud Cattle Co.*, 429 N.W.2d 328, 333 (Neb. 1988) (claimant "failure to take reasonable steps to mitigate damages bars recovery, not in toto but only for the damages which might have been avoided by reasonable efforts"). Thus, whether any amounts a discharged employee could have earned from other comparable employment that may have been available to him or her upon reasonable diligence may be sufficient to completely offset the lost wages resulting from the wrongful discharge is a question of fact under the totality of the circumstances in each case.

¶16    Here, however, the District Court found "minimal Montana case law on point," thus leading it to "broaden its inquiry" to "draw[] guidance from" pertinent federal authority

15

interpreting 42 U.S.C. § 2000e-5(g) (back pay remedy in re employment discrimination under Title VII of the federal Civil Rights Act). Citing *Sangster v. United Air Lines, Inc.*, 633 F.2d 864, 868 (9th Cir. 1980); *Nat'l Labor Rel. Bd. v. Ferguson Elec. Co.*, 242 F.3d 426, 434 (2d Cir. 2001); *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1527 (11th Cir. 1991); and *Meyer v. United Air Lines*, 950 F. Supp. 874, 876-77 (N.D. Ill. 1997), the District Court recognized and applied the federal "Willful Loss of Earnings Doctrine" (WLOED) as a corollary "exception" to the general mitigation of damages provision of § 39-2-905(1), MCA. Under the WLOED, as described by the court, "the employer is relieved of the burden of proving that comparable employment opportunities existed and were available had the terminated employee [pursued] them with reasonable diligence." Based on the above-cited federal authority, the court reasoned:

> Typically, the employer must show that comparable work was available and the claimant did not seek it out. If, however, an employer proves that the employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially comparable employment.
>
> The justification for the WLOED arises from the idea that if an employee failed to exercise reasonable diligence in pursuing comparable employment to mitigate damages suffered from a job termination, it would not have mattered whether comparable job opportunities had existed or not; either way, the terminated employee did not and never would have known about, much less applied for those positions. . . . [The] rule provides an appropriate exception to the usual requirement that the employer prove that suitable work exists and that the employee has not made reasonable efforts to find it. The underlying rationale is that an employer should not be saddled by a requirement that it show other suitable employment in fact existed . . . when the employee, who is capable of finding replacement work, failed to pursue employment at all.

Order on Defendant's Motion for Summary Judgment (Jul. 27, 2021) (quoting *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998), and *Weaver*, 922 F.2d at 1527, punctuation altered).

¶17 Despite the similar common law origin of the duty to mitigate damages implied in § 39-2-905(1), MCA, and underlying the federal WLOED,[6] there is no textual predicate in the very specific mitigation of damages provision of § 39-2-905(1), MCA, from which to logically imply or extrapolate the WLOED. The issue under the express language of § 39-2-905(1), MCA, is what "amounts," if any, a discharged employee "*could have earned . . . from*" other comparable employment or contract work had he or she made reasonably diligent efforts to find and obtain it. *See* § 39-2-905(1), MCA (emphasis added). Moreover, upon sufficient proof by the employer as an affirmative defense, the issue is pertinent only as the measure of the extent to which lost wages resulting from a wrongful discharge, as proven by the wrongfully discharged employee, are subject to reduction or offset. *See* § 39-2-905(1), MCA. In contrast, the upshot of application of the WLOED as an exception to § 39-2-905(1), MCA, is that the failure of a wrongfully discharged employee to make any effort to attempt to find and obtain comparable employment is, as a matter of law, a complete bar to recovery of lost wages resulting from a wrongful discharge, regardless of whether any other comparable employment was in fact actually available to the employee had he or she made such effort. The WLOED is thus

---

[6] *See Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231, 102 S. Ct. 3057, 3065 (1982) (noting "ancient" roots of the common law duty to mitigate damages embodied in Title VII employment discrimination provisions of the federal Civil Rights Act).

wholly inconsistent with § 39-2-905(1), MCA, and similar pre-WDEA Montana common law principles upon which it is modeled. We hold that the District Court erroneously applied the WLOED in this case.

¶18 As recognized by the District Court, it is undisputed on the Rule 56 evidentiary record here that, based on her personal preference for only part-time employment following her unexpected discharge from HRDC employment at almost 65 years old, Timpano "made no effort[] at all" to research, seek out, or acquire other full-time employment that may have been comparable and reasonably available to her in the Lewistown area. The court thus concluded that HRDC was entitled to judgment as a matter of law that she failed to act with reasonable diligence to find and obtain comparable full-time employment to mitigate her lost wages and was therefore barred as a matter of law from recovery of lost wages and benefits under §§ 39-2-904 and -905(1), MCA.

¶19 The only pertinent questions under § 39-2-905(1), MCA, were, however, whether other comparable employment was in fact reasonably available to her *if she had* exercised reasonable diligence to find and obtain it and then, if any, what amounts she "*could have earned*" therefrom for purposes of offsetting the lost wages resulting from her discharge, if proven as wrongful under § 39-2-904(1)(b) or (c), MCA, as she alleges. (Emphasis added.) In that regard, HRDC presented no direct or circumstantial evidence that *any* full-time employment comparable to her HRDC employment was actually reasonably available to Timpano in the Lewistown area, or elsewhere, following her discharge from HRDC. Nor did it elicit any such evidence upon examination of Timpano.

¶20    Based on a single deposition question and response, HRDC asserts that it provided "uncontested evidence" "prov[ing] that a full-time job was in fact available with the Lewistown School District," to wit:

[HRDC]:    The Lewistown School District had a paraprofessional position available.  Were you aware of that?

[Timpano]:   No.  I don't know.  I would say no.

Unacknowledged assertions of counsel in witness examination questions are not evidence, and are thus insufficient to create a genuine issue of material fact under M. R. Civ. P. 56. *Brinkman & Lenon, Architects & Eng'rs v. P & D Land Enters.*, 263 Mont. 238, 243-44, 867 P.2d 1112, 1116 (1994) ("statements of counsel do not meet the evidentiary basis required to support a motion for summary judgment").  *See also State v. High Elk*, 2006 MT 6, ¶ 17, 330 Mont. 259, 127 P.3d 432; *State v. Stuart*, 2001 MT 178, ¶ 22, 306 Mont. 189, 31 P.3d 353; *Cornelius v. Powder River Energy Corp.*, 2007 WY 30, ¶ 18, 152 P.3d 387; *Andreason v. Ariz. Indus. Comm'n*, 433 P.2d 287, 289 (Ariz. Ct. App. 1967); *Draper v. Hellman Com. Tr. & Sav. Bank*, 263 P. 240, 247 (Cal. 1928).  Viewed in the light most favorable to the non-moving party as required under M. R. Civ. P. 56, Timpano neither admitted, nor affirmatively acknowledged, that the referenced paraprofessional position with the Lewistown School District was in fact available following her discharge from HRDC.  Nor did HRDC present any evidence, or elicit any testimony from Timpano, that any such paraprofessional position was in fact comparable to the HRDC position from which she was terminated, reasonably available to her under the circumstances had she applied, and, if so, what the earnings differential would have been in comparison to her

19

HRDC position for purposes of any lost wages offset under § 39-2-905(1), MCA. We hold that genuine issues of material fact remained on the pleadings and Rule 56 record under § 39-2-905(1), MCA, and that the District Court thus erroneously granted HRDC summary judgment on the causation of damages element of Timpano's asserted wrongful discharge claims.

## CONCLUSION

¶21 We hold that the District Court erroneously applied the federal WLOED as an exception to the employer's burden of proving "amounts the employee could have earned" from other employment or work "with reasonable diligence" as referenced in § 39-2-905(1), MCA. We hold further that genuine issues of material fact remained on the pleadings and Rule 56 record under § 39-2-905(1), MCA, and that the District Court thus erroneously granted HRDC summary judgment on the causation of damages element of Timpano's asserted wrongful discharge claims. We therefore reverse and remand this matter for further proceedings on the merits consistent with this Opinion.

/S/ DIRK M. SANDEFUR

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ LAURIE McKINNON